**Kalliope KELCH**

**v.**

**Robert F. KENNEDY, Attorney General of the United States.**

**Civ. A. No. 13884.**

United States District Court
D. Maryland,
Civil Division.

Oct. 9, 1962.

Konstantine J. Prevas, Baltimore, Md., for plaintiff.

Jos. D. Tydings, U. S. Atty., Arthur G. Murphy, Asst. U. S. Atty., Baltimore, Md., for defendant.

CHESNUT, District Judge.

This case has arisen in the administration of the Immigration and Naturalization Service of the United States. The plaintiff, an alien, has filed a complaint asking for an injunction against her deportation for overstaying the time permitted to her to remain in this country as a visitor, and for a declaratory judgment to the effect that the refusal of the Local Director of Immigration to extend the time for her voluntary departure is void as arbitrary and capricious. The Government has filed a motion to dismiss the case on the ground that as a result of the course of the proceedings in the Administrative Office, this District Court of the United States does not have jurisdiction because under the facts stated the sole and exclusive jurisdiction in the case has been vested in the United States Court of Appeals by the provision of the Congressional Act effective October 26, 1961, now codified as 8 U.S.C.A. § 1105a.

Counsel for the parties have agreed upon a stipulation of facts regarding the case which, in chronological order, are:

The United States of America by Joseph D. Tydings, United States Attorney, and Arthur G. Murphy, Assistant United States Attorney, for the District of Maryland, attorneys for the Defendant, and Konstantine J. Prevas, attorney for Plaintiff, stipulate as to the following facts and sequence of events in the above-entitled case. It is stipulated and agreed that the issue on proper joinder of parties and service of process is hereby waived and that the following facts exist:

"1. That Kalliope Kelch, an alien and native of Greece, entered the United States from Greece on November 5, 1961, with her children, Stellianos Floropoulos, age 16, and Constantinia Floropoulos, age 13, as a non-immigrant visitor at New York City to visit her daughter, Maria F. Harmandas in Washington, D. C., with permission to remain until January 5, 1962. Further extension could be granted.

"2. After twenty days she came to Baltimore to visit her cousins, Aristidis and Cathernine Bouloumbassis and on December 23, 1961 she married Harry Kelch, a citizen of Maryland.

"3. On February 8, 1962, Harry Kelch complained to immigration officials that he had married Kalliope Kelch in consideration for a promise that he would be paid $7,000, $1,000 to be paid at the time of marriage and $1,000 a month for six months; he was to live with her for three days after which time she would return to live with her cousin and after five years an annulment would be obtained at the expense of

other parties. The alien denied these allegations at the hearing.

"4. On February 9, 1962, the immigration office at Baltimore, Maryland, applied for an Order to Show Cause why the alien should not be deported for having overstayed the time authorized.

"5. On February 16, 1962, notice was sent to the alien that a hearing would be held at the immigration office in Baltimore on March 27, 1962, at 11:00 A.M.

"6. On March 20, 1962, Attorney Avgerin of Chicago, Illinois, entered his appearance on behalf of Mrs. Kelch in the deportation hearing, after which she was notified that the hearing was postponed to April 25, 1962.

"7. On April 25, 1962, Order to Show Cause and Notice of Hearing was issued by the District Director to the alien to appear on this date to show cause why she should not be deported from the United States because she had remained longer than January 5, 1962, without authority.

"8. On April 25, 1962, a hearing was held before Daniel J. Schrull, Special Inquiry Officer, Immigration and Naturalization Service, at Baltimore, Maryland, at which time the alien admitted that she was deportable and she was granted voluntary departure in lieu of deportation at such time to be set by the District Director. A portion of the order stated that if she did not leave within the time set by the District Director, voluntary departure would be withdrawn without further notice or proceedings and the order of deportation would become effective immediately. Mrs. Kelch waived any appeal from that decision.

"9. On April 26, 1962, a Bill of Complaint for Annulment was filed by George C. Evering, Esq., on behalf of Harry Kelch (Case No. B86054, Docket 102B Folio 202, Circuit Court of Baltimore City).

"10. On April 30, 1962, the District Director by letter gave Mrs. Kelch until May 30, 1962, to voluntarily depart, with copy to her attorney of record.

"11. On May 22, 1962, Mr. Prevas entered his appearance on behalf of Mrs. Kelch and, by letter of same date, requested extension of time within which to effect voluntary departure, reading as follows:

" 'Immigration and Naturalization Service

" '707 N. Calvert Street

" 'Baltimore 2, Maryland

" 'Re: Extension of Voluntary Departure
" 'Kalliope Kelch
A12 148 830
" 'Stellianos Floropoulou A12 148 741

" 'Gentlemen:

" 'On behalf of the above named, request is hereby made for extension of time within which to effect voluntary departure.

" 'Mrs. Kelch has been sued by her husband for an annulment of their marriage, and these proceedings are pending in the Circuit Court of Baltimore City, case number 86054. I have been retained by Mrs. Kelch to defend this action, and I have this day filed an answer to the suit. We are denying the allegations upon which the suit is based, and are asking for a full hearing before a Chancellor in Equity.

" 'It is clearly evident that Mrs. Kelch has at stake certain valuable marital rights in the action pending against her. It is requested that your service cooperate in this matter so that this woman may have her day in court. It would be impossible to defend this action without her presence and without the presence of her son Stellianos Floropoulou, who is a witness to the cohabitation of the parties to the suit.

" 'I also enclose herewith form G–28 for each of the above cases.

" 'Yours truly,
" 'Konstantine J. Prevas
" 'Enclosures

" 'P.S. Duplicate copy also enclosed for use in file A12 148 741'

"12. On May 23, 1962, an Answer and Cross-Bill of Complaint was filed on behalf of Mrs. Kelch by Mr. Prevas to the Bill of Complaint for Annulment; on May 24, 1962, an Order Directing Payment of Counsel Fees and Alimony Pendente Lite was signed by the Circuit Court unless cause to the contrary were shown on or before June 8, 1962.

"13. On May 28, 1962, Mrs. Kelch wrote to the immigration service indicating employment of new counsel, with copy to Mr. Avgerin.

"14. On May 29, 1962, Mr. G. A. McKinnon, Deputy District Director, Immigration and Naturalization Service, Baltimore, Maryland, by telephone, notified Mr. Prevas that the request for extension was denied and on the same date an Answer on behalf of Mr. Kelch to the Cross-Bill of Complaint was filed.

"15. On May 31, 1962, notice was sent to Mrs. Kelch advising her that she was supposed to have notified the immigration office on or before May 21, 1962, of her arrangements for departure and further that the request of Mr. Prevas for an extension of time within which to voluntarily depart was being denied and a warrant of deportation was being issued on the same date. Voluntary departure was withdrawn; Mrs. Kelch was ordered deported and warrant of deportation was issued on the same day.

"16. On June 5, 1962, a motion to take testimony in open court in the annulment proceedings was filed by the alien.

"17. On June 13, 1962, the plaintiff in the annulment proceedings issued summonses for witnesses and on June 15, 1962, he filed an Answer to the Order providing for payment of counsel fees and alimony pendente lite. (Order Nisi).

"18. On June 18, 1962, complaint for Declaratory Judgement and prayer for injunction was filed by Mrs. Kelch, in the District Court of Maryland.

"19. On June 20, 1962, motion of Defendant, United States Government, to dismiss the complaint was filed.

"20. On June 27, 1962, the Plaintiff filed a request for hearing on the motion of the Government.

"21. On August 1, 1962, application number 9338 for marriage of Mrs. Kelch and John Gianaros was made in the Court of Common Pleas of Baltimore City and the parties were married in Baltimore City on August 3, 1962.

"22. On September 13, 1962, the appearance of John de Kowzan, an associate of Mr. Prevas, was filed in the annulment proceedings as co-counsel for Mrs. Kelch and the file referred to Paul Rome, Esq., Equity Examiner, to take testimony in the annulment proceedings."

The 1961 Act prescribes that immigration and deportation proceedings against an alien shall be in accordance with §§ 1031–1042 inclusive, of title 5 U.S.C.A. relating to appeals affecting final orders of determination of certain prescribed agencies of the United States. The principal purpose for the amending statute of 1961 is very fully and conclusively set out in the Committee Report to be found in House Report 1086, 87th Cong. 1st Sess. U.S. Code & Congressional Administrative News, 1961, Vol. 2, beginning at page 2950 but more specifically pp. 2966–2974. See particularly pp. 2968–2969, including a copy of a letter from the then Deputy Attorney General, Mr. Byron White, to the Honorable Emanuel Cellar, Chairman of the House Judiciary Committee, reviewing prior decisions of the Supreme Court including Shaughnessy v. Pedreiro, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955).

 Counsel for the alien concedes that there was an order of deportation and that the order also permitted voluntary departure specifying the ultimate date for voluntary departure as being May 30, 1962. However, he contends that the order should not be considered as a final order by reason of a request for extension of time for voluntary departure which was denied by the District Director. I do not think this is a sound contention. It clearly runs counter to

the main objective of the 1961 amendment. It was at most merely incidental to the order for deportation, and was a matter to be determined in the discretion of the Director, just as would be the case of an application to the court to stay the enforcement of a judgment previously entered. That was in substance the decision of the unanimous decision of the 7th Circuit and the opinion for the minority of four Judges in the 2nd Circuit, as will now appear in a review of the several cases.

7th Circuit: Blagaic v. Flagg, 304 F.2d 623. In that case the alien was a citizen of Yugoslavia, reputedly a Communist country. He entered the United States in 1956 as a seaman on a Yugoslavian ship and was allowed under the applicable immigration law 29 days to rejoin his ship or otherwise depart voluntarily. He long overstayed his leave and subsequently was given a deportation hearing and ordered to be deported. He then applied to the District Director for a withholding of his deportation order under 8 U.S.C.A. § 1253(h) providing that the Immigration Service can withhold deportation where, if carried out, the alien would be subject to physical persecution. This request, although approved by the hearing officer in the special inquiry case regarding deportation, was overruled by the Regional Commissioner. The alien then filed suit in the District Court to require the withholding of the order for deportation.

On the Government's motion the case was then transferred by the District Court to the Court of Appeals for the 7th Circuit. On the hearing in the Court of Appeals it was held (1) that under the provisions of the amending Act of 1961 the court did have jurisdiction and (2) that, despite the apparent argument of Government counsel to the contrary in that particular case, the jurisdiction of the court included not only the main point as to jurisdiction in the Court of Appeals but included therein as incidental to the order of deportation, the determination of the Regional Commissioner in denying the application to withhold

the carrying into effect of the order of deportation, and (3) on the merits of the alien's case with respect to the reason alleged for withholding, the court held on the facts that the alien did not make out a case to show that he would be personally injured by the carrying out of the order for deportation. See also for the same effect Roumeliotis v. Immigration and Naturalization Service, 7 Cir., 304 F.2d 453.

Counsel for the plaintiff here also cites a number of quite recent cases in the 7th Circuit, including Lopez-Blanco v. Immigration and Naturalization Service, 302 F.2d 553; Rukavina v. Immigration and Naturalization Service, 303 F.2d 645. While I have examined these cases, I do not find any point therein of sufficient importance in the instant case to require more detailed consideration. None of them hold that in a case of this general nature, since the amendatory Act of 1961, that the District Court does have jurisdiction in a matter of this kind. The several cases arise under different factual circumstances and involve more particular proceedings of administration under the Act concerning immigration and naturalization.

9th Cir. In support of the plaintiff's contention here that the Court of Appeals does not have jurisdiction in this case, counsel for the plaintiff relies on Mai Kai Fong v. Immigration and Naturalization Service, 9th Cir., 305 F.2d 239. After careful study of that case, I think it does not support the plaintiff's contention here. It is true that the opinion in the case finally concluded that the Court of Appeals for the 9th Circuit did not have jurisdiction in that particular case; but the reasons for this conclusion arise from matters occurring prior to the filing of the suit in the Court of Appeals, matters which do not exist in the instant case here. In that case it is important to note just what had happened prior to the institution of the case in the Court of Appeals. The alien in that case was a citizen of China who had entered this country illegally in 1952. When this was discovered by the Immi-

gration Department, proceedings were begun for his deportation and after a special hearing he was ordered, in 1957, deported to China. Although it seems not to be definitely stated in the opinion, I presume these proceedings were in the State of California or elsewhere in the 9th Circuit. During the course of the proceedings the alien applied for stay of deportation proceedings under 8 U.S.C.A. § 1253, stating that he would be subject to persecution in China. Thereupon deportation was withheld. Subsequently on August 14, 1961 the alien was notified that the order for deportation of 1957 was changed to call for deportation not the country of China but to Hong Kong, a British Crown Colony. He was then notified of deportation to be on September 15, 1961, and that he should report to a specific place on September 14, 1961, completely ready for deportation. Thereafter and before the institution of the action in the 9th Circuit the petitioner filed an action in the District Court of the District of Columbia for a declaratory judgment that the order for deportation was void (1) in that it failed to specify the country to which the plaintiff should be deported and (2) that the petitioner may not be deported to a place "other than a country". This action in the District of Columbia was opposed by the Government and by virtue of further proceedings therein, the details of which seem not important in the instant case here, it was finally determined that the action was dismissed with prejudice.

The Court of Appeals for the 9th Circuit in that case held that it did not have jurisdiction in the case by reason of the provisions of 8 U.S.C.A. § 1105a, par. (c). That paragraph is in the nature of a particular exception to the general jurisdiction conferred on the Court of Appeals by the amending Act of 1961, now under discussion. That is to say, subsection (c) just above mentioned provides, among other things, that "No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding, unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order". Therefore the court held that by the very terms of the amending Act, subparagraph (c) of section 1105a, the case had already been finally determined in the civil proceedings by the plaintiff alien in the District of Columbia; and that the question then presented as to the validity of the order of deportation could have been presented in that civil proceeding. The Court of Appeals also held another reason why § 1105a was not applicable because another provision in subparagraph (5) of § 1105a(a) did not apply where the alien failed to exhaust his remedies in the prior proceeding and at that time the immigration proceeding did authorize administrative remedy with respect to an order for deportation, which had not been pursued by the alien. For both these reasons, neither of which is applicable to the instant case here, the 9th Circuit held that it did not have jurisdiction by reason of the particular exceptions to that jurisdiction found in subparagraph (c) of § 1105a of the amendatory Act of 1961.

2nd Circuit: The *latest* case in the Second Circuit decided September 21, 1962, Foti v. Immigration and Naturalization Service, 308 F.2d 779, has just been brought to my attention. Earlier cases in that Circuit are reviewed in one of the opinions in the case. The Foti case was decided by all the *active* Judges of the Second Circuit, en banc, in which the decision of the majority of five was written by Circuit Judge Friendly, and the opinion on behalf of the minority of four was written by Circuit Judge Clark. Both of these opinions, of course, speak for themselves by the respective Circuit Judges, and I will refer only to the final conclusions respectively. The case had been filed in the Court of Appeals by the alien who complained of the refusal of the Immigration Service to suspend his

deportation. The Immigration Service also apparently concurred in the submission of the case to the Court of Appeals. It was heard originally by a panel of three Judges, Clark, Hincks and Friendly. The majority were of the opinion that the order refusing to suspend deportation should be affirmed, but Circuit Judge Friendly asked for and obtained a hearing by the whole court of active Judges en banc. The five to four decision of the active Judges (Judge Hincks not sitting because a *Senior* Circuit Judge) in the opinion of Circuit Judge Friendly, held the Court of Appeals was without jurisdiction in the particular proceeding and that the application for suspension of deportation was of such a nature that it therefore presumably could be heard by the District Court. The view of the minority of four in the opinion of Judge Clark was that the case was within the meaning and content of the scope of the amending Act of 1961 putting the sole jurisdiction of the case in the Court of Appeals.

The Foti case differs in important respects from the instant case here. Foti did not contest his deportation but had appealed for suspension of deportation under provisions alleged by him to be applicable under § 1254(a) (2, 5) of 8 U.S.C.A. and leading possibly to a change in status where he might ultimately become a citizen. There is nothing of that kind in the instant case as the request was only for extension of the time for voluntary departure, without even any request for stay for a definite period of time. There is also another different circumstance to be noted. As I read the Foti case there was apparently no express order for deportation at a particular time and no warrant for deportation was actually issued as in the present case. And indeed in the Foti case it is not clear that there ever was an express order for deportation at any time. While these particular circumstances in this case perhaps naturally enough were not deemed important in the majority opinion, I think they do assume much weight in the instant case here. Counsel for the alien contends that under the stipulated facts in this case there must be implied an exception to the application of the 1961 amendment. I understand he concedes that there was an order for deportation but that the denial of the request for extension of time for voluntary departure is the fact that constitutes the implied exception. I do not think so. Similar contentions have been quite recently heard, considered and ruled upon by some of the Courts of Appeal—7th, 9th and 2nd Circuits.

█ In the instant case it appears from the stipulation that there was on April 25, 1962 an order allowing voluntary departure to be exercised on or before May 30, 1962, and an alternate order of deportation which would be effected immediately if she did not accomplish her voluntary departure in the time specified. The alien waived any appeal from that decision. It was not until May 22, 1962 that the alien by her counsel requested an order for extension of time for departure, which was denied by Mr. McKinnon, the deputy acting with authority for the Attorney General.

What counsel for the alien now contends for is that this refusal by the Deputy Director constitutes a circumstance which can be reviewed only in the District Court and therefore is an implied exception to the uniform rule of jurisdiction in the Court of Appeals. On the contrary, however, it is my opinion that if the request for the extension is appealable, the jurisdiction to decide on that point, as in the similar case in the 7th Circuit (Balgaic v. Flagg) was incidental to and a part of the whole deportation order itself, and if erroneous could be properly corrected by the Court of Appeals.

The contention to the contrary would, I think, clearly be inconsistent with and directly contrary to the reasons for the 1961 amendment as so fully pointed out in the House Report accompanying the Bill. To sustain the so-called implied exception and therefore hold that this administrative order refusing to extend

the time for voluntary departure creates a situation whereby this District Court has jurisdiction, would apparently much further prolong the fulfillment of the deportation proceeding as it would entail further probably very substantial delay. Thus an appeal from an order dismissing this case in the District Court to the Court of Appeals would probably entail six months or more for a ruling there with a possible further delay of another six months or more for application for certiorari to the Supreme Court of the United States, and with a whole delay of possibly more than a year. And if the order of this court is found erroneous and the case remanded for a trial to be followed possibly by another appeal and another application for certiorari, the whole delay envisioned is likely to be quite indefinite and possibly two years or more. It was to avoid such results as pointed out in the House Report that a uniform rule of jurisdiction in final orders of deportation was given to the Court of Appeals.

As I have reached the conclusion that the case here must fail for lack of jurisdiction in this District Court, it becomes unnecessary for this court to rule upon questions of fact alleged in the bill of complaint in this case, and particularly the allegation that the refusal of the Deputy Director, Mr. McKinnon, to grant the stay was arbitrary and capricious. And indeed counsel for the alien objects to any such determination of fact by this court and I accede to his objection in that respect put on the ground, as he says, that if the case were fully heard here on the facts, he would be able to supply other factual considerations with regard to the procedure which he thinks might have an important bearing in the matter. However, before the case had fully developed clearly as to the precise issue, I did hear in Chambers, with counsel on both sides present, the evidence of Mr. McKinnon as presented by Mr. Prevas for the alien and Mr. Murphy for the United States. In order that the Court of Appeals may have this before it for such consideration, if any, as it de-

serves, it can be inserted in the record on the appeal, if desired by counsel.

Finally, I note that Mr. Murphy for the Government calls attention to the rules of procedure adopted by the Attorney General with due authority of law, with regard to applications for extension of time to depart under voluntary departure. The applicable rule, 8 C.F.R. Part 244.15, provides:

"s.244.15. *Extension of time to depart.* An application for extension of time within which to depart voluntarily from the United States in lieu of deportation shall be made to the officer having administrative jurisdiction of the office in which the case is pending. Such officer may, in his discretion, grant or deny the application. His decision shall be in writing and served upon the alien. No appeal shall lie from a decision denying an application for an extension of time within which to depart."

Counsel on both sides agree that the regulation as to appeal applies to administrative procedure and that it does not of itself determine that the denial order is not appealable to the proper court. But it certainly seems clear from the rule that the nature of the application for a stay is a discretionary matter with the Attorney General or his authorized deputy. In the instant case the stay requested was for an *indefinite* time in the future to enable the alien to testify in a court proceeding. It is further to be noted that four months have passed since the refusal of stay and it also appears from the stipulation of counsel that the Equity Court proceeding in the Circuit Court of Baltimore City has been referred to a Master in Chancery for the taking of testimony of the parties, doubtless including that of the alien who apparently is still resident in Baltimore. And it is reasonably inferable that if the alien has not already testified in the Equity Court proceeding affecting her marriage to Harry Kelch, she will certainly have had ample opportunity to do so fully long prior to possible docketing of this case in the Court of Appeals for the 4th Circuit.

And it will be noted, as stated in the stipulation, that since the filing of the suit in this court the alien has now married here for the second time. I will not further discuss that happening other than to make the relevant comment that it emphasizes the difference between the facts of this case and that in the Foti case, supra, as already noted.

For these reasons I conclude that it is the Court of Appeals for the Fourth Circuit in this case and not this District Court which has jurisdiction to decide the issue, and therefore the case must be and it is hereby *dismissed* without prejudice this 9th day of October, 1962.