Augustus Philip PIPER, Immigration No. A21 640 228, Petitioner,

v.

David CROSLAND, Acting Commissioner, Immigration and Naturalization Service; Henry S. Dogin, District Director, Immigration and Naturalization Service; John Jasey, Assistant District Director for Deportations, Immigration and Naturalization Service; and Alan Kampel, Supervisory Detention and Deportation Officer, Immigration and Naturalization Service, Respondents.

No. 81 C 262.

United States District Court, E. D. New York.

April 24, 1981.

Brooklyn Legal Services Corp. "A" (Arnold Rothbaum and Martin S. Needleman, Brooklyn, N. Y., of counsel), for petitioner.

Edward R. Korman, U. S. Atty., Brooklyn, N. Y. (Abraham Y. Skoff, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for respondents.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Augustus Philip Piper petitions this court for a writ of habeas corpus. He seeks release from the custody of the Immigration and Naturalization Service ("INS") and a grant of indefinite voluntary departure status pending adjudication of the relative petition filed in his behalf by his stepmother.

Petitioner is a native of Nigeria and a citizen of the United Kingdom. He entered the United States with a one year student visa in August 1975. On July 27, 1978 after a deportation hearing an immigration judge found the petitioner deportable because he had overstayed his visa, but permitted him to leave the country voluntarily on or before September 27, 1978 in lieu of deportation. No appeal was taken from that decision.

In early July 1978, three weeks before the deportation hearing, petitioner had married a United States citizen. On September 28, 1978, one day after his voluntary departure status had expired, his wife filed a visa petition to give him immediate relative status as the husband of a citizen. At the time the petition was filed petitioner was told by an INS official in Tampa, Florida that the filing automatically extended his period of voluntary departure and that he could remain in the country until further notification.

After the visa petition was filed, petitioner and his wife moved from their previous residence. The INS apparently was unaware of the change in address and sent a letter to their former residence requesting the couple to appear for an interview in October 1978. Since the letter was not forwarded and the couple had no knowledge of its contents, they failed to appear. In November 1978 they learned of the letter from their former landlord and called the INS office in Tampa, Florida. They were told that another letter would be sent to the new address arranging a new interview. This letter apparently was never received even though petitioner made a follow-up

call to the Tampa office. Therefore, petitioner did not appear for an interview in March 1979.

On March 29, 1979 the District Director denied the visa petition for lack of prosecution. The reasons given for the rejection were the failure to appear for the interviews and the failure to notify INS of any change of address. The couple apparently did not receive notice of the denial of their visa petition.

During this period petitioner and his wife were troubled by marital problems. She left him in June 1979 but returned one month later, only to leave him again in August 1979 after declaring her intention to file for divorce.

In December 1979 petitioner visited the Tampa office and spoke to an INS investigator. He informed the investigator of his separation from his wife and his intention to oppose the divorce. The investigator said he was too busy with Iranian students to consider the case at that time and asked petitioner to leave all his addresses so that he could be reached in the future.

He was arrested on September 22, 1980 under the deportation order of July 27, 1978 at an address in Minnesota that he had given to the INS investigator in Tampa. He was then transported to New York and placed in an INS detention facility, where he has remained to this day.

Petitioner's application to reopen the deportation proceedings to permit him to apply for a new grant of voluntary departure was denied by an immigration judge on November 14, 1980. But on January 16, 1981 the Board of Immigration Appeals ("Board") reopened the proceedings. The Board found that petitioner's failure to depart within the time initially authorized was apparently based on a good faith belief that he had permission to remain beyond that time. Relying on this finding of good faith and on petitioner's representations that he has the financial means to depart voluntarily and is willing to do so within the terms set by the District Director, the Board vacated the order of deportation and permitted petitioner to depart voluntarily at such time and under such circumstances as the District Director might direct. The Board also ordered that in the event he failed so to depart he should be deported.

Meanwhile, on January 6, 1981, ten days before the Board's order, petitioner's stepmother, Cecilia Ana Piper, filed a Form I-130 Petition to Classify Status of Alien Relative For Issuance of Immigrant Visa. Ms. Piper is a legal permanent resident currently living in St. Paul, Minnesota.

On January 14, 1981, two days before the decision of the Board of Immigration Appeals, petitioner applied to the District Director to extend the stay of the order of deportation pending adjudication of the appeal and the I-130 petition. On the same day, the application was denied by a letter from the District Director, Henry S. Dogin, to petitioner's attorney stating, among other things:

You were notified by telephone that you failed to present evidence of a marital relationship between the alien's father and stepmother as well as the birth certificate of the alien showing a relationship to the husband of a legal permanent resident. It is neither Service policy nor immigration law to allow an alien to remain in the United States while the Board of Immigration Appeals decides whether to reopen deportation proceedings. Furthermore, assuming arguendo that the alien does have a legal permanent resident stepmother you can not be contending that the framers of law and policy intended that an alien obtain immigration benefits as a result of a history of deliberate violations of that law and policy. The application for a stay of deportation is therefore denied.

Immediately after the Board decision, petitioner asked to be released on his own recognizance or upon a reasonable bond pending final adjudication of his stepmother's I-130 petition. This application was never responded to directly, but it was effectively denied by an order dated January 22, 1981 that required petitioner to depart at his own expense by January 27, 1981.

Petitioner contends that this denial of his application was contrary to INS's internal Operations Instruction 242.1(a)(25), which provides in pertinent part:

Pending final adjudication of a petition which has been filed, the district director will not deport, or institute proceedings against, the beneficiary of the petition if approval of the petition would make the beneficiary immediately eligible for adjustment of status under section 245 of the Act or for voluntary departure under the Service policy set forth in Operations Instruction 242.10(a)(6)(i). The district director may, however, seek to deport or institute proceedings against the beneficiary when it is determined that the petition is frivolous or there are substantial adverse factors which, based on the district director's opinion, would probably lead to the denial of adjustment of status or extended voluntary departure in the exercise of discretion.

■ It is clear that a non-resident alien who has overstayed his visa has no constitutional or statutory right to remain in this country while a relative petition is being adjudicated. *Noel v. Chapman*, 508 F.2d 1023 (2d Cir.), *cert. denied*, 423 U.S. 824, 96 S.Ct. 37, 46 L.Ed.2d 40 (1975). It is equally clear that the decision of whether to extend the date of voluntary departure is within the sole discretion of the District Director of INS and may be overruled by a court only for an abuse of discretion. 8 C.F.R. § 244.2; *Bolanos v. Kiley*, 509 F.2d 1023, 1026 (2d Cir. 1975).

■ Although the District Director has discretion in these matters provided he is not arbitrary and capricious, he must follow the rules adopted by INS when they affect the rights of individuals. *See Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974). A deviation from those rules without adequate justification is an abuse of discretion. The sole issue before this court, then, is whether the District Director acted in compliance with Operations Instruction 242.1(a)(25) in denying the application for an extended period of voluntary departure pending adjudication of the relative petition.

■ The parties agree that, if the I–130 petition is approved, petitioner will be eligible for voluntary departure but not adjustment of status. Therefore, under the terms of Operations Instruction 242.1(a)(25) the District Director may not deport petitioner without determining either that the petition was "frivolous" or that there are "substantial adverse factors" which "would probably lead" to the denial of extended voluntary departure.

The District Director did not articulate any such determination. The only written response to petitioner's application following the Board decision was the form order of January 22, 1981 which said simply, "In accordance with a decision made in your case by the Board of Immigration Appeals and the District Director of this office you are required to depart from the United States at your own expense on or before January 27, 1981." This court holds that since acceptance of the pending I–130 petition would make petitioner eligible for extended voluntary departure, it was an abuse of discretion to deny an application to stay deportation without setting forth a "rational explanation." *See Wong Wing Hang v. Immigration and Naturalization Service*, 360 F.2d 715, 719 (2d Cir. 1966).

Such an explanation is essential to ensure that the District Director based his denial on justifiable grounds. Without it this court has no way to review the administrative decision.

■ The District Director's written denial of petitioner's January 14, 1981 application for a stay does not serve as a rational explanation of the denial of the subsequent application. The second application was not merely a repetition of the first. Much had changed in the interim. The Board had reversed the immigration judge and found that petitioner's failure to leave the country within the time initially authorized was based on an apparent good faith belief that was supported by INS policy as set forth in Operations Instruction 242.1(a)(25). Thus, the District Director's view that petitioner

had "a history of deliberate violations" of immigration law and policy was no longer a permissible basis for a decision.

Moreover, as a result of the Board decision, petitioner was no longer faced with an outstanding order of deportation but was granted the opportunity of voluntary departure. This change in status may be pertinent to the District Director's decision.

Further, the District Director denied petitioner's January 14, 1981 application for a stay in part because he had failed to present evidence of a marital relationship between his father and stepmother and a birth certificate showing his relationship to his stepmother's husband. His attorney had mailed the marriage certificate and baptismal record to the Board, by its request, on January 13, 1981, and they apparently had not come to the attention of the District Director on January 14, 1981. However, by the time the second application was filed on January 16, 1981 the District Director should have received these documents.

This court finds that it was an abuse of discretion to deny petitioner's application to extend his period of voluntary departure without a rational explanation. Respondents are ordered to release petitioner from the INS detention facility upon a reasonable bond. His application of January 16, 1981 requesting an extension of his period of voluntary departure pending adjudication of his stepmother's I-130 petition shall be deemed granted unless and until the District Director provides a rational explanation for its denial that accords with the provisions of Operations Instruction 242.-1(a)(25). So ordered.