**Antonio PADULA and Guiseppina Sestina Di Sanzo Padula, Petitioners,**

**v.**

**U. S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Civ. No. H–82–92.**

United States District Court, D. Connecticut.

March 31, 1982.

Edward R. Smoragiewicz, Cardwell, Cardwell & Smoragiewicz, Hartford, Conn., for petitioners.

George J. Kelly, Jr., Asst. U. S. Atty., Hartford, Conn., for respondent.

## RULING ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

BLUMENFELD, Senior District Judge.

Plaintiffs, Antonio and Guiseppina Sestina Di Sanzo Padula, bring this action chal-lenging the District Director's denial of their request for an extension of time in which to voluntarily depart from this coun-try. Plaintiffs contend that the District Director abused his discretion in denying their request for an extension of time. The basis of this claim is that the plaintiffs' children, both United States citizens, will either be deprived of their parents or forced to withdraw from school during the school term, if their parents are forced to return to Italy prior to June 22, 1982. Plaintiffs seek a preliminary injunction restraining the Immigration and Naturalization Service (INS) from deporting them prior to June 23, 1982, the end of the school term. Juris-diction, although not pleaded by the plain-tiffs, arguably exists under section 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329, which confers upon the dis-trict courts jurisdiction of all causes arising under any of the provisions of subchapter II of the Act.[1] A hearing on the motion for preliminary injunction was held on March 8, 1982, at which time a stipulation of facts and several other exhibits were received into evidence.

## I. BACKGROUND

The plaintiff, Guiseppina Sestina Di San-zo Padula, was admitted to the United States as a permanent resident on May 11, 1968. She was married to the plaintiff, Antonio Padula, in the United States on February 15, 1969. Mr. Padula gained per-manent resident status on December 31, 1969. The plaintiffs have two children, Leone, born June 22, 1970, and Innocenzo, born August 19, 1971, both citizens of the United States.

Plaintiffs and their children returned to Italy and on December 10, 1974 voluntarily surrendered their permanent resident cards. They remained in Italy until they reentered the United States on July 3, 1980 on visitors visas, which expired on August 25, 1980.

1. Subchapter II includes the provisions of the Act relating to immigration and the deportation of aliens.

On August 25, 1980, Mr. and Mrs. Padula, submitted a request for an extension of their visas, stating that they intended to depart the United States on October 8, 1980. Their request was denied but they were granted voluntary departure until January 10, 1981, which would have allowed them to depart at the end of the school term. The plaintiffs overstayed this departure date, and an order to show cause why they should not be deported was issued on February 18, 1981. Thereafter, an order granting voluntary departure was entered on October 1, 1981, with a departure date of no later than January 4, 1982. This voluntary departure date was further extended until January 20, 1982.

On January 13, 1982 plaintiffs, through counsel, requested an extension of the voluntary departure date of January 20, 1982 until June 23, 1982 so that their children could complete the school term. On January 18, 1982 the INS denied the request for an additional extension of time and required the plaintiffs to depart this country by January 20, 1982. On January 19, 1982 plaintiffs filed an application for a stay of deportation. The application was denied on January 26, 1982 and on the same day the INS issued an order of deportation with a departure date of February 8, 1982.

On February 5, 1982 the plaintiffs, through counsel, argued a motion to reopen and a motion to stay deportation before Immigration Judge Nathan Gordon. The judge restored voluntary departure, but stated that he was powerless to grant an additional extension of time. The immigration judge directed plaintiffs' counsel to make his request for an extension of time to the District Director, who has it within his discretion to grant such a request. Plaintiffs' counsel then requested a meeting with the District Director so that he might request such an extension of time on behalf of his clients. The District Director, however, would not discuss the matter with plaintiff's counsel at that time.

On February 9, 1982 the INS issued Form I–210, which informed the plaintiffs that they were required to leave the country by February 16, 1982. Subsequently on February 22, 1982, the INS issued an order of deportation with a departure date of March 2, 1982. On that date plaintiffs sought and obtained an order from this court restraining the defendant from deporting them and setting the motion for preliminary injunction down for a hearing on March 8, 1982.

During their stay in this country, plaintiffs reapplied for permanent resident status and were given a priority date of September 8, 1980. Visas will be issued to them as soon as their priority date reaches current status and they may adjust their status to permanent residents without leaving the United States.

## II. DISCUSSION

### A. *Jurisdiction.*

As stated previously, the plaintiffs have not pleaded a jurisdictional basis which would allow this court to entertain their appeal from the District Director's denial of their request for an extension of time to voluntarily depart from the United States. Nor has the defendant objected to the complaint on this ground. The parties, however, cannot confer jurisdiction on this court simply by their consent, and the court may raise the issue of lack of jurisdiction over the subject matter on its own initiative. See 2A *Moore's Federal Practice* 2458–2461.

In the instant case, subject matter jurisdiction is arguably conferred by section 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329, which provides that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this title [title II of the Act of June 27, 1952, classified generally as 8 U.S.C. §§ 1151 *et seq.*]" "Section 279 was subsequently modified by the addition of section 106 of the Act, 8 U.S.C.A. § 1105a, which conferred upon the courts of appeals exclusive jurisdiction to review final orders of deportation made by the INS against aliens within the United States." *Acosta v. Gaffney,* 558 F.2d 1153, 1155 (3d Cir. 1977).

Because the instant case does not involve the review of a final order of deportation, section 106 of the Act does not limit this court's jurisdiction.

The question of jurisdiction arises, however, because of the following provision in the Code of Federal Regulations.

Extension of time to depart    .

Authority to extend the time within which to depart voluntarily specified initially by a special inquiry officer [immigration judge] or the Board [of Immigration Appeals] is within the sole jurisdiction of the district director. A request by an alien for an extension of time within which to depart voluntarily shall be filed with the district director having jurisdiction over the alien's place of residence. Written notice of the district director's decision shall be served upon the alien, and *no appeal may be taken therefrom.*

8 C.F.R. § 244.2 (emphasis added). The underlined language in the above quotation would, if taken at face value, preclude an appeal from the District Director's decision denying plaintiffs' request for an extension of time to depart. Other district courts, when faced with this problem, have expressed their doubts about their power to consider an appeal from the District Director's decision. Yet they nonetheless assumed jurisdiction over this type of claim and reviewed the District Director's actions on the merits.

In *Randazzo v. Esperdy,* 334 F.Supp. 1083 (S.D.N.Y.1970) the court assumed jurisdiction over an action to review a claim by a deportable alien that the refusal of the Service to extend the time within which he could voluntarily depart was an abuse of discretion. The court doubted that it had jurisdiction, but nevertheless proceeded to review the action. *Id.* at 1085–86.

*Nasan v. Immigration and Naturalization Service,* 449 F.Supp. 244, 246 (N.D.Ill.1978). Similarly, in *Adame v. Immigration and Naturalization Service,* 349 F.Supp. 313 (N.D.Ill.1972), the court stated as follows:

Although there is a serious question as to whether this court has jurisdiction to review the actions of the District Director in this case, *Randazzo v. Esperdy,* 334 F.Supp. 1083 (S.D.N.Y.1970); *Kelch v. Kennedy,* 209 F.Supp. 416 (D.Md.1962); 8 C.F.R. § 244.2, it is at least clear that the scope of review is very narrow. *Fernandez-Gonzalez v. Immigration and Naturalization Service,* 347 F.2d 737 (7th Cir. 1965). Only in the case of a clear showing of abuse of discretion can this court upset the decision of the District Director. *Kladis v. Immigration and Naturalization Service,* 343 F.2d 513 (7th Cir. 1965).

*Id.* at 315.

Following the example of these decisions, I will assume jurisdiction over plaintiffs' claim without attempting to definitively resolve the complex questions going to this court's jurisdiction. I stress, however, that even if the "denial of an extension of voluntary departure is reviewable, the scope of review is quite narrow. This court should not substitute its judgment for that of the District Director's unless his decision is found to be a clear abuse of discretion." *Randazzo v. Esperdy,* 334 F.Supp. at 1086.

B.   *Standard for Issuance of Preliminary Injunction.*

█   The standard for the issuance of a preliminary injunction in this circuit requires the following: "a showing of irreparable injury *and* either (1) probable success on the merits *or* (2) sufficiently serious questions going to the merits to make them a fair ground for litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Caulfield v. Board of Education of the City of New York,* 583 F.2d 605, 610 (2d Cir. 1978). For the purposes of this ruling, I will assume that plaintiffs' deportation prior to June 23, 1982 will cause them and/or their children irreparable injury [2] thereby satisfy-

---

2.  Plaintiffs have submitted a letter from Mrs. Gertrude O'Connell, principal of the Dwight School, where their children attend school.

The letter indicates that in Mrs. O'Connell's opinion, the children will be seriously hurt if their education is interrupted in mid-term. The

ing the first of the requirements for a preliminary injunction.

### 1. Probable Success on the Merits.

█ The issue in this case is whether the District Director abused his discretion by denying plaintiffs' request for an extension of time to voluntarily depart.[3] The District Director's decision

would be an abuse of discretion if it were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group, or, in Judge Learned Hand's words, on other 'considerations that Congress could not have intended to make relevant.' *United States ex rel. Kaloudis v. Shaughnessy, supra,* 180 F.2d [489] at 491. [2d Cir. 1950]

*Bolanos v. Kiley,* 509 F.2d 1023, 1026 (2d Cir. 1975), *quoting from Wong Wing Hang v. Immigration and Naturalization Service,* 360 F.2d 715, 719 (2d Cir. 1966).

The record before this court provides absolutely no basis for finding an abuse of discretion. Plaintiffs have not argued, nor could they, that the District Director's decision "inexplicably departed from established policies or rested on an impermissible basis such as an invidious discrimination against a particular race or group." Instead, plaintiffs argue that the District Director's decision was arbitrary and capricious, and thus failed to meet the requirement of rationality imposed by the courts. Plaintiffs point to three factors in support of their claim. First, that the District Director refused to meet with their attorney on February 5, 1982 when he was requested to do so. Second, that the decision itself, by forcing the parents to separate themselves from their children violates humanitarian

principles and is therefore without a rational basis. And last, plaintiffs suggest that the possibility that they may become eligible to adjust their status to that of legal resident aliens somehow entitles them to remain in this country until that contingency occurs. None of these arguments deserves serious consideration.

It is clear that the District Director had a rational basis for denying plaintiffs' request for an extension of time in which to depart voluntarily. In a letter to plaintiffs' attorney, dated January 26, 1982 the District Director spelled out his reasons for denying plaintiffs' application for a stay of deportation. He stated:

It appears that if Mr. and Mrs. Padula were interested solely in their children's education, they have had ample opportunity to return to Italy with them between school years and that this application is motivated more by a wish to avoid leaving this country as long as possible than by any thought of their children's education.

The District Director's letter provided plaintiffs with a rational explanation for his decision, and they are entitled to no more. The District Director's refusal to meet with plaintiffs' counsel can hardly be characterized as arbitrary and capricious, since the Director already knew the content of the request and had previously denied a similar one. In any case, it is not this court's role to instruct the District Director in what office routines he must follow. As long as there is a rational basis for his decision, as there is here, that decision will not be upset by a reviewing court.

This salutory principle applies with equal force to plaintiffs' claim that the District Director's actions violate humanitarian principles. A reviewing court may not overrule the District Director on humani-

---

court accepts this as evidence supporting its assumption that plaintiffs could meet the requirement of showing irreparable injury.

**3.** Plaintiffs claim that there is another issue in this case: whether the District Director acted at all in response to their request for an extension of time. It is conceded, however, that the

INS did communicate with plaintiffs on February 9, 1982, informing them that they were required to depart on or before February 16, 1982. The court concludes that this Form I–210 constituted a response by the District Director, and therefore this "issue" need not be considered further.

tarian or any other grounds, as long as the Director's decision has a rational explanation. As noted above, the Director quite clearly had a rational basis for denying plaintiffs' request for an extension of time. That a rational basis existed and was communicated to plaintiffs requires this court to conclude that the District Director did not abuse his discretion in this case.

Plaintiffs' last argument appears to be that they are entitled to remain in this country until their priority date comes up and they are able to adjust their status to that of legal residents. This argument, however, has already been rejected by the court of appeals in this circuit.

> There is no requirement that a deportable alien be permitted to remain in this country while his application for a quota preference status and an immigration visa are processed by a consular office outside the United States.

*United States ex rel. Fen v. Esperdy*, 423 F.2d 6, 8 (2d Cir. 1970). As this quotation indicates, plaintiffs have no entitlement to remain in this country pending a change in their status, and accordingly the Director's decision cannot be considered an abuse of discretion.

### CONCLUSION

It is clear that the plaintiffs have failed to meet the second requirement for granting a preliminary injunction: probable success on the merits. It is equally clear that they have failed to meet the alternative requirement for granting a preliminary injunction: a serious question going to the merits and a balance of hardships tipping decidedly in plaintiffs' favor. This case simply does not present a serious question of fact or law which presents a fair ground

for litigation. Given the narrow scope of judicial review in this context, there is no basis for finding that the District Director abused his discretion in denying plaintiffs an extension of time in which to voluntarily depart from the United States. Accordingly, plaintiffs' motion for a preliminary injunction is denied.[4]

SO ORDERED.

---

4. Plaintiffs' post-hearing memorandum seeks to distinguish the cases on which the defendant relies. It does not, however, cite any cases in support of its contention that the District Director abused his discretion in denying plaintiffs' request for an extension of time. The case counsel cited during the hearing, *United States v. Floulis*, 457 F.Supp. 1350 (W.D.Pa. 1978), does not support his claim that the District Director abused his discretion. In fact, *Floulis* comes closer to supporting the defend-

ant's position, insofar as it recognizes broad discretion in the District Director where there is no indication that his action is arbitrary or capricious. *Id.* at 1358. Plaintiffs' brief essentially repeats its earlier assertions that the District Director abused his discretion by denying the request for an extension of time. The court may not properly grant a preliminary injunction on the basis of these vague assertions unsupported by authority.