**Job CARRETE–MICHEL, Plaintiff,**

**v.**

**IMMIGRATION & NATURALIZATION SERVICE, Defendant.**

**No. 83–1112–CV–W–6.**

United States District Court,
W.D. Missouri, W.D.

Nov. 14, 1983.

Robert Frager, Kansas City, Mo., for plaintiff.

Mark Zimmermann, Asst. U.S. Atty., Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER GRANTING INJUNCTIVE RELIEF

SACHS, District Judge.

### FACTS

1. Plaintiff, a citizen of Mexico, entered the United States at Laredo, Texas, on or about July 10, 1969, at which time he was admitted to the United States as an immediate relative immigrant on presentation of an immigrant visa granted to him on the basis of a marriage to a United States citizen.

2. The visa granted to the plaintiff was based on his misrepresentation that he was married to a United States citizen. A previous marriage in Mexico had not been terminated.

3. Deportation proceedings were brought against plaintiff and he was given notice of the proceedings and an opportunity to be heard. After a hearing before the immigration judge, the judge ruled on January 17, 1980, that the plaintiff was deportable.

4. During the course of the proceedings before the immigration judge, the plaintiff applied for voluntary departure in lieu of deportation.

5. The immigration judge, in lieu of an order of deportation granted plaintiff voluntary departure of sixty (60) days, i.e., March 17, 1980, "or any extension beyond that date as may be granted by the District Director and under conditions as he shall direct." The immigration judge further ordered

> that if the [plaintiff] fails to depart when and as required, then the privilege of voluntary departure shall be withdrawn without further notice or proceedings and the following order shall become immediately effective: the [plaintiff] shall be deported from the United States to Mexico on the charge contained in the Order to Show Cause.

*In re Job Carrete-Michel,* No. A18–954–971, slip op. at 14 (I. & N. Dec., Jan. 17, 1980).

6. Plaintiff did not depart under the grant of voluntary departure; instead he filed an appeal with the Board of Immigration Appeals. On August 16, 1983, the Board of Immigration Appeals affirmed the decision of the immigration judge and permitted the plaintiff

> to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the District Director; and in the event of failure so to depart, the [plaintiff] shall be deported as provided in the immigration judge's order.

*In re Job-Carrete Michel,* No. A18–954–971, slip op. at 5 (Board of Immigration Appeals, Aug. 16, 1983).

7. A copy of the decision of the Board of Immigration Appeals was sent to plaintiff's attorney, Robert Frager, at the following address: 500 Waltower Building, 823 Walnut, Kansas City, *Kansas* 64106.

8. Plaintiff's attorney's address is in *Missouri.* Mr. Frager received the decision of the Board on August 26, 1983.

9. The local office of the INS received the decision of the Board on August 30, 1983.

10. By letter of September 6, 1983, Mr. Frager requested that the acting district director extend voluntary departure from September 16, 1983, until at least March 15, 1984. Counsel's stated reasons were that it would be difficult for the plaintiff to sell his residence and dispose of household effects in such a short time and that the plaintiff had a demonstrable case of hardship, particularly with respect to his children's education. Further, he argued that Congress was about to legalize aliens such as the plaintiff presently in the country.

11. Currently plaintiff has filed no appeal to the Board of Immigration Appeals decision with the United States Court of Appeals for the Eighth Circuit. He purportedly has filed a motion for reconsideration, the timeliness of which is not in question.

12. On September 16, 1983, the thirty (30) days allowed to plaintiff for voluntary departure expired, while his request was pending. Plaintiff did not depart.

13. Plaintiff presented no facts to the acting district director of the INS indicating that it was his affirmative desire to leave the United States. There is no basis to conclude, however, that he would abscond or be unwilling to comply with final legal requirements.

14. By letter of September 22, 1983, the acting district director responded to Mr. Frager's request for an extension and denied it. The acting district director, William Skidmore, denied the request for voluntary departure for the primary reason that

as far back as 1981 Mr. Carrete was aware of the unfavorable decision of the Immigration Judge and should have commenced making arrangements at that time. The Board of Immigration Appeals again granted a second period of time of 30 days in which to depart when the appeal was dismissed on August 16, 1983. Apparently Mr. Carrete has chosen to ignore this departure date and the Order of Deportation has become final. I do not believe that an extension is justified considering the amount of time already granted for the above mentioned reason.

The acting district director also stated he could not reconsider the merits of the Board of Immigration Appeals' decision since he had no jurisdiction. The acting district director further stated that he did not believe the possibility of legislation justified an extension of voluntary departure, nor was the acting district director convinced that the plaintiff would benefit from any possible legislation, given the fraud by which he obtained his immigrant visa in the first instance. Mr. Skidmore did not then question plaintiff's basic eligibility for an extension.

15. Plaintiff was directed to report for deportation on October 13, 1983.

16. By letter of October 4, 1983, Mr. Frager again requested a favorable decision on his request for extension of voluntary departure.

17. By letter of October 6, 1983, the acting district director again denied plaintiff's request to extend voluntary departure time.

18. The complaint in this case, seeking review of the denial of an extension, was filed October 7, 1983. A show cause order, including a restraining order, was issued and November 3, 1983 was selected as an agreed date for a preliminary injunction hearing.

19. At a conference in the Court's chambers immediately prior to the Novem-

ber 3rd hearing defendant offered to grant voluntary departure privileges to plaintiff if plaintiff would refrain from further appeals.

20. In his testimony at the November 3rd hearing, Mr. Skidmore stated his belief that an intention to pursue an appeal is inconsistent with the policies underlying voluntary departure status, and asserted he did not believe plaintiff was qualified for an extension because he thought plaintiff did not intend, unconditionally, to depart from the country.

21. The parties have agreed that the present record is sufficient for the Court to enter final judgment, and the Court will now take final action pursuant to Rule 65, Fed.R.Civ.P., rather than enter a preliminary injunction.

## CONCLUSIONS OF LAW

■ Although regulations provide that "no appeal may be taken" from the denial by a district director of an alien's request for an extension of time for voluntary departure (8 C.F.R. § 244.2) it is well established that there is district court jurisdiction to review such actions. *Padula v. Immigration & Naturalization Service,* 537 F.Supp. 563 (D.Conn.1982); *Piper v. Crosland,* 519 F.Supp. 962 (E.D.N.Y.1981). Review is limited to a search for illegality, abuse of discretion or failure to provide an adequate rational explanation of the denial. *Id.*

■ In the present case there were two administrative malfunctions which resulted in an ill-considered and untimely response to the request for an extension. Notice of adverse action by the Board of Immigration Appeals was misaddressed, thereby causing plaintiff's counsel to be delayed in formulating his request for an extension. By reason of a subsequent inability or failure to process official mail, the request did not reach Mr. Skidmore's desk until after the previous permit had expired. The

hasty response of September 22, 1983, relied on the principal contention that plaintiff had enjoyed sufficient time, during a three-year administrative appeal, to prepare himself for a quick departure. The supposition that an alien involved in a lengthy deportation proceeding will or should keep his bags packed, so to speak, is obviously unrealistic. In the present case plaintiff Carrete is a family man with children in school, good employment and a house on which he is making mortgage payments. The alien is not responsible for administrative delays within the Board of Immigration Appeals and cannot, with reason, be held to a reduced departure time because of the years of delay in processing his appeal. On the contrary, the credibility of a governmental need for urgent departure of an alien is somewhat weakened by the leisurely pace of the administrative process.[1]

■ It may be assumed that a period of several months for departure would normally be allowed from the time a decision becomes final, considering such factors as the prospective uprooting of a family, sale of a residence, disposition of belongings, and, when appropriate, a search for new employment. The *Padula* decision offers an example of reasonable treatment of a request for an extended period for voluntary departure. Total rejection of the Carrete request was an abuse of discretion.

Unless there were unstated reasons for harsh treatment in this case (a matter considered below) it seems probable that administrative embarrassment affected the result. When the request for an extension reached Mr. Skidmore's desk after the time to depart had expired it was tempting to seek to rationalize an adverse ruling. The Court is unable to find acceptable reasoning in the major point advanced in the letter of September 22, 1983, and it is therefore understandable that Government counsel sought to advance a new and different reason at the hearing in this case.

---

1. The Court does not condone unreasonable delay by either party or the Board of Immigration Appeals. It would be supposed that deportation proceedings should progress at least as expeditiously as criminal prosecutions.

Mr. Skidmore testified at the hearing that he suspected, but did not state, that plaintiff "would not depart as required" if he had been granted an extension. It is apparently the view of the Immigration and Naturalization Service that there is an inconsistency between a request for voluntary departure and the prospective appeal from a Board of Immigration Appeals decision adverse to the alien.

Government counsel bolster their contention with a regulatory citation and a judicial citation. In order to qualify for voluntary departure an alien must establish that he "is willing and has the immediate means with which to depart promptly." 8 C.F.R. § 244.1. This language is doubtless susceptible of construction that an alien is given the choice between prompt voluntary departure and exhaustion of his legal remedies. It could simply mean, however, that there must be reason to believe that the alien would not abscond or otherwise seek to evade legal requirements, but rather would promptly comply with a final decision as to his legal status.

The statutory authority for granting the privilege of voluntary departure simply requires adequate financial means and at least five years of conduct evidencing good moral character. 8 U.S.C. § 1254(e). The most important advantage of voluntary departure is that it facilitates the possibility of return to the United States, in that an ordinary visa is sufficient, rather than special permission from the Attorney General. *Landon v. Plasencia*, — U.S. —, 103 S.Ct. 321, 326 n. 4, 74 L.Ed.2d 21 (1983).[2]

It may be assumed arguendo that Government counsel in a deportation case could properly engage in what amounts to "plea bargaining" by seeking a waiver of legal rights in exchange for recommending a voluntary departure permit. *Cf. United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982). It is entirely improbable, however, that a district director, when acting in a quasi-judicial ca-

pacity, could lawfully impose or invite such a choice.

In analogous contexts, it has been said that a judicial officer cannot " 'put a price on an appeal.' " *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969); *Worcester v. Commissioner*, 370 F.2d 713, 718 (1st Cir. 1966); *Short v. United States*, 344 F.2d 550, 552 (D.C.Cir.1965); *United States v. Wiley*, 278 F.2d 500, 504 (7th Cir.1960) (abuse of discretion for trial court to enhance sentence because a defendant "availed himself of his right to a trial," at least when the defense is not frivolous). Similarly, deportation cannot be used as punishment for the exercise of a protected right. *Lennon v. United States*, 387 F.Supp. 561, 564 (S.D.N.Y.1975).

In determining whether waiver of appeals may be exacted as the price for granting a permit for voluntary departure, a Second Circuit case cited by the Government has language favorable to both sides in this controversy. *Ballenilla-Gonzalez v. Immigration & Naturalization Service*, 546 F.2d 515, 521 (2d Cir.1976), *cert. denied*, 434 U.S. 819, 98 S.Ct. 58, 54 L.Ed.2d 75 (1977). The Second Circuit admonished the Board of Immigration Appeals that "discretion [to grant voluntary departures] should not be used by the Board to insulate its decisions and procedures from constitutional or statutory challenge." *Id.*

> If an alien has a facially meritorious claim going to the validity of a deportation order, he or she should not be discouraged from seeking review by the offer of voluntary departure on terms that will evaporate if the appeal is pursued. The result would be to penalize an alien in the bona fide, non-frivolous exercise of a constitutional right. *Id.*

The Court also noted, however, that it had previously quoted with approval a Board of Immigration Appeals opinion stating that a grant of the privilege of voluntary departure is designed " ' "to effectuate the alien's prompt departure without further

---

**2.** Reference to voluntary departure as a privilege rather than a right does not, of course, imply that it may be arbitrarily denied or denied under a mistake of law.

trouble to the Service." ' " *Id.* "Trouble" was defined by the Board of Immigration Appeals to include further legal controversies. It was suggested that where there are " ' "further and most costly procedures [by the alien seeking] to continue his illegal stay here, the original benefit to the Service is lost." ' "

The Second Circuit attempted to reconcile the conflicting theories by observing that the alien in question was not contending she was not deportable, or had a right to remain. Her appeal to the BIA was characterized as "unquestionably meritless." She had not "expressed any intention to seek review." The Second Circuit observed, however, that the alien could have preserved her right by filing "a petition for review within the 30-day period fixed by the Board for voluntary departure and requesting us for a stay of the Board's order pending appeal. These procedures enable the Board or this court, in cases where a prima facie meritorious basis for appeal is shown, to permit its being pursued *without prejudice to voluntary departure.*" *Id.* (emphasis added).

■ The Second Circuit opinion, thus, ultimately contradicts the Government's theory here that an alien cannot properly seek a permit for voluntary departure while at the same time planning to seek review of a Board of Immigration Appeals decision. "Willingness" to depart, as used in the regulation, cannot be construed by the district director, acting in a quasi-judicial role, as being inconsistent with an intent to pursue further legal proceedings. Any ambiguity in the regulation will be construed in favor of preserving the right to seek bona fide judicial appeals. The Government's construction will be rejected, thereby avoiding serious constitutional or statutory questions which would endanger the validity of the regulation.

The acting district director, in denying plaintiff's request for voluntary departure status, was acting in a quasi-judicial manner. While a district director doubtless sometimes makes quasi-prosecutorial decisions, *see Johns v. Department of Justice*

*of United States*, 653 F.2d 884, 890 (5th Cir.1981), in the instant case the ruling purportedly had finality and was not prosecutorial. It did not look toward the initiation or prosecution of an adversarial proceeding, in which there would be neutral decision-maker. Rather, it may be classified as an ancillary administrative action, in which the acting district director assumed a neutral role. *See Ghorbani v. Immigration & Naturalization Service*, 686 F.2d 784, 791 n. 16 (9th Cir.1982). Thus, Mr. Skidmore could not bargain for or insist upon the expedient ends of the Service but had a responsibility to protect plaintiff's legal rights against coerced waiver. The "suspicion" that plaintiff might seek appellate judicial relief was an improper consideration, if it entered into the September 22nd decision.

■ Also unjustifiable was the possible consideration that the denial was partially based upon plaintiff's overstaying the September 16, 1983 deadline. The six-day delay must properly be classified as de minimis, particularly when the alien was awaiting a ruling from the district director. *See Hegerich v. Del Guercio*, 255 F.2d 701 (9th Cir.1958) (unjustifiable three-day delay was de minimis).

■ Neither party asks this Court to consider the merits of the Board of Immigration Appeals decision. That will be a matter for the Court of Appeals, when the decision becomes final. The acting district director was correct on September 22nd in declining to consider the ultimate merits. It will not be inferred at this point that plaintiff, acting through counsel, is being simply dilatory by pursuing frivolous contentions. Good faith will be presumed. Rule 11, Fed.R.Civ.P.

It is therefore concluded that the acting district director abused his discretion or acted under a mistake of law in making his September 22, 1983, decision, and the decision is hereby VACATED. This ruling is without prejudice to a new decision, adequately explained so as to demonstrate a

rational basis,[3] granting or denying the request for an extension of the privilege of voluntary departure, or granting the request for an initial period shorter than that sought by the plaintiff.

It is further ORDERED that the Immigration & Naturalization Service is enjoined from taking any action against plaintiff based upon the September 22, 1983 letter directive to plaintiff or from taking any further action to deport plaintiff, except consistently with this decision.

Jurisdiction is retained for the enforcement, modification, or clarification of this order.

**3.** A requirement of *Piper v. Crosland,* 519   F.Supp. at 966.