Joseph **RUKAVINA** Petitioner,

v.

The **IMMIGRATION AND NATURALI-ZATION SERVICE**, Respondent.

No. 13547.

United States Court of Appeals Seventh Circuit.

May 24, 1962.

Anna R. Lavin, Chicago, Ill., for petitioner.

James P. O'Brien, U. S. Atty., John P. Crowley, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., of counsel, for respondent.

Before KNOCH, CASTLE and SWYGERT, Circuit Judges.

KNOCH, Circuit Judge.

This petition for review of a deportation order is filed in this Court pursuant to the provisions of the Immigration and Nationality Act of 1952, § 106(a) as amended (Public Law 87–301), 8 U.S. C.A. § 1105a(a).

Joseph Rukavina is a native of Austria-Hungary who entered the United States as a quota resident alien in 1914. Subsequently, in 1939, he was deported on the ground that he had been sentenced more than once, to imprisonment of one year or more, on conviction in the United States, of a crime committed after entry, involving moral turpitude. In one case, the offense was obtaining money, property, or credit, by means of the confidence game in the year 1933.

He re-entered as a stowaway, and in 1954, was again deported as an excludable alien. On May 31, 1960, he was again charged with being an excludable alien subject to deportation, having en-

tered the United States in December, 1956, as a stowaway. After a hearing before a special inquiry officer, petitioner was ordered deported. His appeal to the Board of Immigration Appeals was dismissed.

Petitioner contends that his deportation in 1939 was based in part on conviction of a crime which did not involve moral turpitude and that he was, therefore, illegally deprived of his resident status which he was merely resuming on the two occasions when he was charged with illegal entry.

It is petitioner's position that "moral turpitude" characterizes an act of baseness or depravity contrary to accepted moral standards, as of the time of the act. Petitioner notes that obtaining money, etc., by the confidence game is not included among "infamous" crimes in the Illinois Revised Statutes, Ch. 38, § 587. Petitioner asserts that fraud is not involved in the offense and that the crime of which petitioner was convicted was one analogous to "bare embezzlement."

■ Numerous Illinois cases have defined obtaining money by means of the confidence game as a crime involving a "fraudulent scheme." Petitioner would have us disregard these cases as of too recent determination, and not representative of the moral standards of 1933. We cannot agree. Obtaining money by means of the confidence game involves an act of cheating or swindling. Even if we do limit ourselves to the accepted moral standards of 1933, we must conclude that the crime did involve moral turpitude.

■ Petitioner has moved this Court for leave to file the certified record of petitioner's conviction in People v. Joseph Rukavina, No. 67036, Criminal Court of Cook County, Illinois, in support of petitioner's contention that his conviction was for a crime not involving moral turpitude.

This motion must be denied. Title 8 U.S.C.A. § 1105a(a) (4) provides for our review of final orders of deportation to be based solely on the administrative record. The certified record sought to be filed is not a part of that administrative record. However, we doubt that this exhibit would aid petitioner's case. It includes the indictment to which petitioner pleaded guilty. That indictment charges that petitioner "unlawfully, fraudulently and feloniously did obtain * * * seven thousand dollars * * *."

Petitioner relies on DiPasquale v. Karnuth, 2 Cir., 1947, 158 F.2d 878 and Delgadillo v. Carmichael, 1947, 332 U.S. 388, 68 S.Ct. 10, 92 L.Ed. 17, to support his position that he was taken out of the United States against his will and hence cannot be said to have "entered" on his return. In DiPasquale, an alien rode in a railroad sleeping car from Buffalo, New York, to Detroit, Michigan, without knowing that the train passed through Canada on the way. The Second Circuit held that when, still asleep, he arrived at Detroit, he could not be said to have "entered" the country.

Delgadillo was a seaman. He made a legal entry in 1923 and resided in the United States continuously until 1942, when he shipped out on an intercoastal voyage from Los Angeles, California, to New York City, in an American merchant ship. The ship was torpedoed on the way. Delgadillo was rescued and taken to Havana, Cuba, where the American Consul cared for him for about a week. He was then returned to the United States via Miami, Florida. He continued to serve as a seaman in the American merchant fleet. The United States Supreme Court held that his arrival at Miami from Havana was not an "entry" within the meaning of the Immigration Act.

This short summary of the facts of these cases indicates that they differ materially from the matter presently before us.

■ Petitioner's counsel in oral argument asserts a right to judicial review of the order of deportation entered in 1939 on the ground of gross miscarriage of justice. Title 8 U.S.C.A. § 1105a(c). We have carefully reviewed the pro-

ceedings in the instant case and find no such gross miscarriage of justice as would justify our review of the 1939 proceedings. U. S. ex rel. Rubio v. Jordan, 7 Cir., 1951, 190 F.2d 573.

All other arguments advanced on behalf of the petitioner have been carefully considered. None of them alters our conclusion that the decision of the Board of Immigration Appeals must be affirmed.