## MATTER OF VRETTAKOS

### In Deportation Proceedings

### A-15721298

*Decided by Board June 11, 1973 and March 5, 1974*

(1) The Board of Immigration Appeals lacks jurisdiction to review on direct certification a Regional Commissioner's determination of an application for permission to reapply for admission following deportation since such application does not come within the jurisdiction of the Board as specified in 8 CFR 3.1(b).

(2) An immigration judge, like the Board of Immigration Appeals, is without authority in deportation proceedings to grant *nunc pro tunc* permission to reapply for admission after deportation unless the granting of such application is appropriate and necessary for the complete disposition of the case, and is without authority to grant *advance* permission to reapply.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Crewman—entered the United States after being refused permission to land temporarily.

ON BEHALF OF RESPONDENT:
Rowena L. Vrettakos (respondent's wife)
4500 Cheltenham Drive
Bethesda, Maryland 20014

Jack Wasserman, Esquire
1707 "H" Street, N. W.
Washington, D. C. 20006

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

BEFORE THE BOARD
(June 11, 1973)

The record relates to a married male alien, a native and citizen of Greece, 32 years of age, who first entered the United States in 1961 as a nonimmigrant crewman permitted to land temporarily for a period of 3 days, which was later extended to 13 days. He remained longer than authorized and was subsequently apprehended by Service officers while engaging in unauthorized employment. Deportation proceedings were commenced and he was found deportable. On November 25, 1961, he left the United States

voluntarily in lieu of deportation. In 1963 the respondent was a crewman serving aboard a vessel that went to Canada. On May 14, 1963 he deserted his vessel at Vancouver, British Columbia. On June 16, 1963 he reentered the United States without inspection by surreptitiously crossing the border near Champlain, New York. He was apprehended by the Service, and, after a deportation hearing, was deported to Greece on July 2, 1963.

On March 19, 1970, the respondent was again admitted to the United States as a nonimmigrant crewman, at Newport News, Virginia. A conditional landing permit was issued, evidently without knowledge of the respondent's prior deportation. Two days later, the respondent was apprehended by the Service at a bus terminal in Newport News when he was about to depart for Washington, D.C. with a one-way ticket. He was taken into custody, his conditional landing permit was revoked, he was returned to his vessel, and his detention on board was ordered pursuant to section 252(b) of the Immigration and Nationality Act. The vessel left the United States, with the respondent aboard, but suffered a collision and returned to port. On March 23, 1970 the respondent absconded from the ship and entered the United States illegally.

The respondent married a native-born United States citizen on May 21, 1971. On July 7, 1971 his wife filed a petition in his behalf to classify his status as that of an immediate relative of a United States citizen under section 201(b) of the Act. The petition was approved on July 17, 1971 and was forwarded to the United States Consulate at Toronto, Canada, where the respondent intends to apply for an immigrant visa. The filing of the petition on July 7, 1971 brought the respondent's presence in this country to the attention of the Service. As a result, on the same day an Order to Show Cause was issued, charging the respondent with deportability in connection with his illegal reentry into the United States on March 23, 1970, in violation of section 252(a) of the Act; that is, after being refused permission to land temporarily as a crewman. The present deportation proceedings are based upon that charge.

On July 15, 1971 the respondent applied to the District Director at Buffalo, New York for *nunc pro tunc* permission to reapply for admission into the United States following deportation. The District Director denied the application on September 21, 1971 on the ground that a favorable exercise of administrative discretion was not warranted because of the respondent's disregard for the immigration laws. His decision was appealed to the Service's Regional Commissioner. On appeal, the respondent asserted that the District Director had failed to consider that denial would result in unusual hardship to his United States citizen wife. On

February 11, 1972, the Regional Commissioner affirmed the District Director's denial, in view of what he termed the respondent's deliberate violation of the immigration laws on at least three occasions. The Regional Commissioner concluded that the favorable factor of the respondent's marriage to a United States citizen was not sufficient to override the unfavorable factor of the respondent's history of illegal entries and unauthorized employment.

On April 21, 1972 a deportation hearing was conducted before an immigration judge in Washington, D.C. During the course of the hearing the respondent moved to renew his application for *nunc pro tunc* permission to reapply for admission after being deported. The immigration judge at first denied the application on the ground that he did not have the jurisdiction to entertain it, but he subsequently changed his mind and approved the application. He found the respondent deportable as charged and afforded him the privilege of voluntary departure, using Form I-39. In the margin, he entered the following notation: "Application for permission to reapply for admission into the U.S. after deportation is hereby granted *nunc pro tunc* as of March 18, 1970." It is obvious that the immigration judge meant the *nunc pro tunc* relief to relate to the respondent's illegal entry on March 23, 1970. That illegal entry is the basis for the present deportation proceedings.

As an aside, we feel it would have been better practice for the immigration judge to have rendered a written opinion instead of merely noting the *nunc pro tunc* grant in the margin of a Form I-39, which is ordinarily used in very simple cases presenting no complex issues. However, this is not a crucial matter here, as the present appeal is concerned with the extent of the immigration judge's jurisdiction rather than with his reasons for making the grant.

The Service appealed from that portion of the immigration judge's order that granted *nunc pro tunc* permission to reapply. The Service contends that the immigration judge lacked power to make such a grant because granting *nunc pro tunc* permission would not make possible the conclusion or termination of the proceedings.

On July 27, 1972, on motion of the Service's General Counsel, we remanded the file to the Service to afford the Regional Commissioner an opportunity to reconsider the respondent's application for *nunc pro tunc* permission to reapply. Additional information bearing on the respondent's character and behavior had been obtained by the Service, and the Service felt it desirable that the Regional Commissioner have an opportunity to review his earlier decision. The case was remanded pursuant to a stipulation of

counsel providing that "such remand shall be without prejudice to resubmission of the case to the Board by either party, should the alien not be granted permission to reapply." The Regional Commissioner, in an order dated December 1, 1972, adhered to his original decision. The Regional Commissioner "certified" his decision to us.

The first question presented is whether we have jurisdiction to review the Regional Commissioner's decision, even though he certified it to us. We conclude that we do not have the power to review directly a matter within the jurisdiction of the Regional Commissioner. The regulation dealing with certification, 8 CFR 3.1(c), does provide for certification to us by duly authorized officers of the Service, including, of course, Regional Commissioners. But that regulation pertains only to matters within our appellate jurisdiction as set forth in 8 CFR 3.1(b). This is not true of respondent's application for advance permission to reapply for admission following deportation. Such an application comes instead under the jurisdiction of the District Director and the Regional Commissioner, pursuant to 8 CFR 103.1(f) and 103.1(e)(7). We previously held, in *Matter of Sum*, 13 I. & N. Dec. 65 (BIA 1968), that we do not have jurisdiction to review directly a District Director's determination under section 249 of the Act, because section 249 cases are not enumerated in 8 CFR 3.1(b). We did note, however, that we could review the section 249 determination if the issue arose on appeal from an immigration judge's deportation order. The *Sum* case involved a District Director's determination on a matter not within 8 CFR 3.1(b). The same reasoning applies to a similar determination of a Regional Commissioner.

We shall, however, regard the case as being restored for consideration on the Service's appeal and adjudicate the appeal because the stipulation referred to above provided for resubmission of the case to the Board by either party should the alien not be granted permission to reapply.

On appeal the Service urges (1) that the Board reaffirm its prior rulings that an immigration judge has no authority to take action with respect to an application for permission to reapply for entry after deportation unless necessary to the final disposition of the case, and (2) that inasmuch as the grant would not result in adjustment or termination in the present case, the immigration judge's grant of such relief be declared a nullity. The Service has no objection to the remainder of the immigration judge's order.

The respondent, on the other hand, maintains that the action of the immigration judge in granting the respondent *nunc pro tunc* permission (1) was within the scope of his authority as conferred by statute and regulation, (2) was a reasonable exercise of admin-

istrative discretion, and (3) was consistent with the principle of maintaining the integrity of the family unit, which is a fundamental policy underlying the immigration laws.

Ordinarily, applications for advance permission to reapply lie primarily, as we have seen, within the jurisdiction of the District Director and the Regional Commissioner. In *Matter of S—N—*, 6 I. & N. Dec. 73 (BIA 1954, AG 1954), it is stated that we do have the authority to rule on an application for *nunc pro tunc* permission to reapply, but only in certain cases. That is, our power is to be exercised only where taking action will completely dispose of a particular case. The rationale for the decision in *Matter of S—N—*, *supra*, was that "it is a basic concept of the Board's appellate jurisdiction that it must do complete justice for the alien in a given case, and therefore, must take any action necessary to dispose of the particular case." This is in accord with 8 CFR 3.1(d), which grants to us the power to exercise "such discretion and authority conferred upon the Attorney General by law *as is appropriate and necessary for the disposition of the case.*" (Emphasis supplied.)

The same rationale should be applied to the immigration judge, whose jurisdiction in deportation cases, as set forth in 8 CFR 242.8(a), contains language similar to that relating to the Board contained in 8 CFR 3.1(d). The immigration judge is given the power "to take any other action consistent with the applicable provisions of law and regulation *as may be appropriate to the disposition of the case.*" (Emphasis supplied.) In neither statute nor regulation do we find any express grant of authority to the immigration judge to handle applications for advance permission to reapply. Hence we believe the limitations on the authority of the Board contained in *Matter of S—N—*, *supra*, are constraints on the power of the immigration judge as well. Thus, we find that he also may not entertain an application for *nunc pro tunc* permission to reapply unless granting the application would completely dispose of the case.

It is clear that a grant of *nunc pro tunc* permission would not completely dispose of the respondent's case. The only relief from deportation that would terminate his case and in connection with which the retroactive elimination of a ground of inadmissibility would be relevant would be adjustment of status under section 245 of the Act. The respondent, however, who is charged with deportability as a crewman who entered after being denied permission to land temporarily, is expressly barred from section 245 relief by the very terms of the statute, which excludes crewmen from its scope. Hence, the grant of *nunc pro tunc* permission, as of March 18, 1970, or any other date, would not in any way affect his deportability, render him nondeportable, or permit termination of the proceed-

ings by allowing him to avail himself of discretionary relief from deportation. Therefore, we find that we may not entertain an application for *nunc pro tunc* permission in the present case as it now stands. See *Matter of M—C—*, 9 I. & N. Dec. 280, 284 (BIA 1961). By the same token, the immigration judge also lacked authority to pass on such an application. Consequently, his grant of *nunc pro tunc* relief was beyond his power and must be considered a nullity. The Service's appeal will accordingly be sustained.

In view of the foregoing, there is no need for us to go into the question of whether the immigration judge's grant of *nunc pro tunc* relief was a proper exercise of administrative discretion. See *Gonzalez-Jimenez v. Del Guercio*, 253 F.2d 420 (C.A. 9, 1958).

Respondent's sole recourse would appear to be to leave the United States, and, while abroad, to submit a fresh application for advance permission to reapply to the appropriate United States Consul, who would then forward the application for decision to the District Director having jurisdiction over the place where the deportation proceedings were held, pursuant to 8 CFR 212.2(c).

The following order will accordingly be entered.

**ORDER:** The Service's appeal is sustained.

*Further order*: Pursuant to the immigration judge's order, the respondent be permitted to depart from the United States voluntarily within 30 days from the date of this decision or any extension beyond that time as may be granted by the District Director; and that, in the event of failure so to depart, the respondent shall be deported as provided in the immigration judge's order.

## BEFORE THE BOARD

### (March 5, 1974)

The respondent, on July 6, 1973, filed a motion seeking reconsideration of our order of June 11, 1973, in which we sustained an appeal by the Service, ruling that the immigration judge did not have authority to grant the respondent *nunc pro tunc* permission to reapply for admission after deportation because the grant would not completely dispose of the proceedings. Newly retained counsel, in his motion, does not dispute our ruling with regard to *nunc pro tunc* permission to reapply. He contends, rather, that the immigration judge does have the power to approve, in deportation proceedings, an application for *advance* (not *nunc pro tunc*) permission to apply, by virtue of 8 CFR 212.2(g). We do not agree with counsel's contention and we find no reason to recede from our order of June 11, 1973. However, we shall amplify our earlier decision in order to distinguish the factors involved in a grant of

598

*nunc pro tunc* permission to apply for readmission after deportation as opposed to a grant of advance permission to reapply.

The motion to reopen raised a question not considered by us when we entered our order of June 11, 1973. At that time we were not confronted with the issue of whether the immigration judge had power to grant *advance* permission to reapply after deportation. We merely reviewed the immigration judge's grant, on April 21, 1971, of *retrospective* or *nunc pro tunc* permission to reapply. We ruled that, on the basis of the pertinent precedents, the immigration judge lacked authority to pass upon such an application, absent a specific grant of authority to do so, because a grant of *nunc pro tunc* permission would not completely dispose of the respondent's case. Even with the *nunc pro tunc* grant the respondent would remain deportable, being ineligible, as a crewman, for adjustment of status under section 245 of the Immigration and Nationality Act. We held that the immigration judge, like this Board, had authority to rule on an application for *nunc pro tunc* permission to reapply only when appropriate and necessary for the disposition of the case. In effect, we extended the limitations on our authority set forth in the precedent decision of *Matter of S— N—*, 6 I. & N. Dec. 73 (BIA 1954, AG 1954), to apply to the immigration judge as well.

It will be helpful to clarify our earlier order by pointing out that the actual application submitted at various times by the respondent was for advance permission to reapply—not for *nunc pro tunc* permission. This is true not only of the application filed with the District Director and reviewed twice by the Regional Commissioner, but also of the application, on Form I-212, filed with the immigration judge on April 21, 1971. In effect, what the respondent did was to seek advance permission, *prior* to going abroad, either voluntarily or under an order of deportation. The regulations permit this procedure so that many aliens may know in advance that they will be permitted to return, and are thus saved the uncertainty and inconvenience of going abroad before submitting such an application. The immigration judge, upon his own volition, elected to treat the respondent's request for advance permission to reapply as one for retrospective or *nunc pro tunc* permission.

At oral argument before this Board, on January 16, 1973, the respondent was not represented by counsel but his case was well presented by his United States citizen spouse. She urged that, in deportation proceedings, an irregularity in entry, including reentry after deportation without permission to reapply, may be cured

by the discretionary grant of *nunc pro tunc* permission to reapply.[1] The case of *Gonzalez-Jimenez* v. *Del Guercio*, 253 F.2d 420 (C.A. 9, 1958), was cited as authority for this position, both by the immigration judge (Tr. p. 6) and by the respondent's representative. The court in that case observed that there was no right to be granted permission to reapply and that it was restricted to examining the question of whether there had been an abuse of discretion in denying the application. The court simply ruled that there was no abuse of discretion. We fail to see how that case supports the respondent's position.

The appellate trial attorney, in his memorandum of law dated June 21, 1972, accurately perceived that what the respondent was seeking was not *nunc pro tunc* permission to reapply for admission, but, in fact, *advance* permission, so as to waive the disability arising from his 1963 deportation and from the present deportation proceeding should he fail to depart voluntarily. The appellate trial attorney cited the regulations providing for seeking advance permission initially from the District Director, pursuant to 8 CFR 212.2(d), with an appeal lying to the Regional Commissioner under 8 CFR 103.1(e)(7). In connection with its appeal from the immigration judge's order, the Service maintained that the immigration judge's grant of *nunc pro tunc* permission to reapply was not proper because the grant would not result in termination of the proceedings. As the Board said in its earlier order of June 11, 1973, the grant of *nunc pro tunc* permission would be within the scope of an immigration judge's authority if it would conclude the proceedings before him. This might be true in the case of an alien in deportation proceedings (1) whose sole ground of deportability is under section 241(a)(1) of the Act, as an alien excludable at entry under section 212(a)(17) for reentering the United States after deportation without first securing the permission of the Attorney General; or (2) who seemingly qualified for adjustment of status under section 245 of the Act, except for his inadmissibility as an alien who was deported.

In our earlier order, we addressed ourselves only to the second possibility. To clarify our holding conceptually, we shall now deal with both. We find, however, that the respondent does not come within either category.

First, with respect to a *nunc pro tunc* grant that eliminates a deportation charge, we note that the respondent was not charged with being deportable under section 241(a)(1) by virtue of inadmissibility under section 212(a)(17). He could have been so charged although he was not. Even if he had been, any other charges

---

[1] The respondent's representative stated, incorrectly (page 11 of transcript), that the respondent was *not* asking for *advance* permission to reapply.

lodged against him would have remained, unless waived. He was actually charged, and found deportable, under section 241(a)(2), as an alien in the United States in violation of law, having entered as a crewman after being denied permission to land temporarily. There is no provision in the law for a waiver of this ground of deportability. Consequently, a *nunc pro tunc* grant relating to his deportability because of inadmissibility under section 212(a)(17) would not have eliminated the ultimate ground of deportability in his case.

Second, paving the respondent's way for adjustment of status under section 245 of the Act by removing a ground of inadmissibility would be possible only if so curing the respondent's inadmissibility by virtue of his reentry after deportation would, in and of itself, render the respondent statutorily eligible for consideration for the discretionary relief of adjustment of status. As we pointed out in our earlier order, the respondent was barred from section 245 relief for the underlying reason that he is a crewman, and all crewmen are statutorily excluded from adjustment. Accordingly, *nunc pro tunc* permission to reapply after deportation would not have removed the final obstacle to seeking adjustment. Consequently, a *nunc pro tunc* grant would not have enabled the complete disposition of his case. Therefore, we hold that neither avenue under which a grant of *nunc pro tunc* permission could have been made was open to the respondent.

Inasmuch as a grant of *nunc pro tunc* relief could not wrap up the respondent's deportation proceedings, we held, on June 11, 1973, that the immigration judge did not have authority to make such a grant. We accordingly sustained the Service's appeal. At the time, we did not consider the other issue now introduced by counsel, namely whether the immigration judge had the power to grant *advance*, as opposed to *retroactive* permission to reapply after deportation.

Counsel's motion for reconsideration reflects some confusion as to the distinction between *nunc pro tunc* and advance permission to reapply. The motion states that the Board's order of June 11, 1973 ruled that "the power [of an immigration judge] to take action as may be appropriate to the disposition of the case did not include advance permission to reapply after deportation unless granting the application would completely dispose of the case." This overlooks the fact that our order of June 11, 1973 was directed solely to the issue of *nunc pro tunc*, not advance, permission to reapply. As was mentioned above, the issue of the authority of the immigration judge to grant *advance* permission was not dealt with in our earlier order.

Counsel maintains that the immigration judge's decision should

be permitted to stand because, under 8 CFR 212.2(g), he had "jurisdiction." Counsel's reading of 8 CFR 212.2(g) is incorrect. The regulation itself starts off by stating it is applicable "except in the case of an applicant seeking to be granted advance permission to reapply." Thus, by the very language of the regulation, it confers no power upon the immigration judge where an *advance* grant of permission to reapply is sought.

The respondent is deportable and he must leave the United States, whether voluntarily or under an order of deportation. He will remain inadmissible, even if he departs voluntarily, because of his deportation in 1963, unless he secures the permission of the Attorney General to reapply for admission. As we noted in our order of June 11, 1973, the respondent's sole recourse would appear to be to journey abroad, and, while there, make a fresh application with the appropriate United States Consul, who will forward the application to the Service.

It is clear from the regulations that determinations as to advance permission to reapply are reserved to the District Director, with review by the Regional Commissioner. We conclude, therefore, that not only did the immigration judge lack the power in this case to approve a *nunc pro tunc* grant of permission to reapply, but he also lacked power to grant advance permission. The respondent's motion for reconsideration will be denied, and our order of June 11, 1973 will stand, except as modified by our decision herein.

Once the respondent leaves the United States, an application for *advance* permission to reapply for admission will no longer be timely. The advance permission option is reserved for aliens who are still physically present in the United States. Although the District Director denied his application for advance permission, and the Regional Commissioner twice upheld the denial, the respondent is free to renew his application for permission to reapply after he leaves the United States, this time not in advance, not *nunc pro tunc*, but contemporaneously, with the District Director having jurisdiction over the port of entry selected. See 8 CFR 212.2(e).

ORDER: The motion for reconsideration is denied.