Damian **PEREZ–RODRIGUEZ,**
Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE,**
Respondent.

No. 92–3081.

United States Court of Appeals,
Seventh Circuit.

Argued April 28, 1993.

Decided Aug. 25, 1993.

Ralph M. Schelly, Chicago, IL (argued), for petitioner.

Fred Foreman, U.S. Atty., Criminal Div., Chicago, IL, William J. Howard, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, A.D. Moyer, I.N.S., Chicago, IL, Marshall T. Golding (argued), Office of Immigration Litigation, Civil Div., Washington, DC, for respondent.

Before BAUER, Chief Judge, COFFEY, Circuit Judge, and EISELE, Senior District Judge.*

COFFEY, Circuit Judge.

Damian Perez–Rodriguez ("Perez"), petitions for review of a decision of the Board of Immigration Appeals ("BIA"). The BIA affirmed the immigration judge's finding that Perez was deportable under the Immigration and Nationality Act, *see* 8 U.S.C. § 1251(a)(1)(A) (1988 & Supp. IV 1992), because he reentered the United States following an earlier deportation without the Attorney General's permission, *see* 8 U.S.C. § 1182(a)(6)(A) (1988 & Supp. IV 1992), and without valid entry documents, *see* 8 U.S.C. § 1182(a)(7)(A)(i)(I) (1988 & Supp. IV 1992). We deny the petition for review.[1]

---

* The Honorable Garnett Thomas Eisele, Senior District Judge of the United States District Court for the Eastern District of Arkansas, is sitting by designation.

1. The immigration judge rendered his decision in

## I. BACKGROUND

Perez is a forty-six-year-old native and citizen of Mexico who was admitted into the United States as a lawful, permanent resident in November of 1974. On April 13, 1977, Perez was ordered deported for entering the United States on March 29, 1977, without inspection in violation of 8 U.S.C. § 1251(a)(1)(B) (1988 & Supp. IV 1992). He was deported to Mexico on July 25, 1977, but his stay in that country was rather short—he reentered the United States at Eagle Pass, Texas, later that same day. He was not questioned by officials upon his return, and he entered upon his claim of lawful, permanent residency. In June of 1978 Perez was convicted of smuggling an alien into the United States in violation of 8 U.S.C. § 1324(a)(2) (1988). For this he served sixteen months of a three-year term of imprisonment. In August of 1979 the Immigration and Naturalization Service ("INS") issued an order to show cause why Perez should not be deported, charging that Perez was deportable under 8 U.S.C. § 1182(a)(6)(A), for having entered the United States following his deportation without the Attorney General's consent. Nearly seven years later, in July of 1986, the INS added to its order to show cause a charge that Perez was deportable because he had entered the United States without the immigration documents required by 8 U.S.C. § 1182(a)(7)(A)(i)(I).

In May of 1987 an immigration judge ruled that Perez was deportable on the basis of both charges brought by the INS. He found that Perez was deportable on the basis of 8 U.S.C. § 1182(a)(7)(A)(i)(I), because Perez's prior deportation had nullified his immigrant visa and, as such, Perez had entered the United States without a valid entry document. He also found that Perez was deportable on the basis of 8 U.S.C. § 1182(a)(6)(A), because Perez had not procured the Attorney General's consent to enter the United States. Perez sought retroactive permission to enter the United States after deportation or, alternatively, to depart the United States volun-

tarily. The immigration judge found that he lacked the authority to entertain Perez's application for retroactive permission to enter the United States because Perez was deportable on more than one ground. He also found that Perez was not entitled to an order allowing him to depart the United States voluntarily because the factors that would favor voluntary departure (Perez was married to a woman who was a United States citizen and had three children who also were United States citizens) were outweighed by the factors that would disfavor it (Perez had two criminal convictions and had misrepresented his criminal record during the hearing).

Perez appealed the immigration judge's decision to the BIA. The BIA affirmed the judge's decision, concluding that Perez was deportable on the basis of 8 U.S.C. § 1182(a)(7)(A)(i)(I), because Perez's status as a lawful, permanent resident terminated on April 13, 1977, when the INS entered a final order of deportation and, as such, when Perez reentered the United States on July 25, 1977, he did so without valid immigration documents. The BIA also agreed with the immigration judge's finding that he lacked the authority to entertain Perez's application for retroactive permission to enter the United States. The BIA stated that retroactive permission can be granted only if by granting it the sole ground of deportability or inadmissibility would be eliminated. In this case, the BIA noted, granting Perez retroactive permission to enter the United States would not eliminate the sole ground of deportability or inadmissibility because Perez was deportable on two grounds: for entering the United States without the Attorney General's permission *and* for entering without valid entry documents. Perez timely filed a petition for review of the BIA's decision.

## II. ISSUES

Perez raises three issues in his petition for review. He first contends that, contrary to

1987, three years before Congress' amendments to 8 U.S.C. §§ 1182(a) and 1251(a). The amendments decreased the number of classes of excludable aliens from thirty-four to nine by broadening the descriptions of the classes. *See* Immigra-

tion Act of 1990, Pub.L. No. 101–649, § 601(a), 104 Stat. 5066–85. Because the amendments simply reorganized the two provisions and did not substantively change them, we cite to the amended versions in this opinion.

the position taken by both the immigration judge and the BIA, he did not lose his status as a lawful, permanent resident when the INS ordered him deported on April 13, 1977, and he therefore was not deportable under 8 U.S.C. § 1182(a)(7)(A)(i)(I), for entering the United States with an invalid immigrant visa. Perez also contends that he should have been granted retroactive permission to enter the United States or, alternatively, that he should have been allowed to depart the United States voluntarily.

## III. DISCUSSION

■ Authority to adjudicate an alien's deportability is vested primarily in the Attorney General and his delegates, the immigration judge and the BIA. *Variamparambil v. INS,* 831 F.2d 1362, 1366 (7th Cir.1987) (quoting *In re Lok,* 18 I & N Dec. 101, 107 (BIA 1981), *aff'd,* 681 F.2d 107 (2d Cir.1982)). Although the alien is entitled to seek review of an adverse decision in the Court of Appeals, the scope of judicial review is limited. *Id.* Absent an error of law or unfairness in procedure, the court must affirm the administrative order of deportation if the order is supported by "reasonable, substantial, and probative evidence." 8 U.S.C. § 1105a(a)(4) (1988); *Howard v. INS,* 930 F.2d 432, 434 (5th Cir.1991); *Variamparambil,* 831 F.2d at 1366.

Perez first argues that the BIA erred in ruling that he lost his status as a lawful, permanent resident when the INS entered the final order of deportation on April 13, 1977. "Lawful, permanent resident" is defined in 8 U.S.C. § 1101(a)(20) (1988), as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with immigration laws, *such status not having changed.*" (emphasis added). Perez was admitted into the United States as a lawful, permanent resident in November of 1974 and retained that status unless it "changed" within the meaning of § 1101(a)(20). The BIA concluded that Perez's status as a lawful, permanent resident "changed" upon entry of the final order of deportation on April 13, 1977, because once the order was entered Perez's privilege of residing in the United

States permanently was terminated (barring, of course, a reversal on the merits of the finding of deportability by a court). . If the BIA's position is correct, then Perez's reentry into the United States on July 25, 1977, clearly violated 8 U.S.C. § 1182(a)(7)(A)(i)(I), because the immigrant visa that he used to reenter the United States was invalid. The question therefore becomes whether the BIA's interpretation of § 1101(a)(20) is reasonable.

■ In answering this question we work within the now-familiar framework of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We first determine whether the plain language of the statute dictates a certain answer to our question. "The plain language of the statute should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). If the plain language of the statute is ambiguous or silent on the issue then we must determine whether Congress delegated to the INS the authority to make the legal interpretation in issue. *Chevron,* 467 U.S. at 843–44, 104 S.Ct. at 2782–83; *see also Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408, 411–12 (7th Cir.1987). If Congress intended no such delegation, we must interpret the statute with little deference to the INS's interpretation. If, however, Congress intended to deputize the INS with the authority to interpret the statute, we must make a third inquiry: "whether the [INS's] answer is based on a permissible construction of the statute." *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782. So long as the INS's interpretation is reasonable, we must defer to that interpretation and not impose our own construction on the statute. *Id.*

■ The plain language of § 1101(a)(20) is silent on precisely when an alien's status as a lawfully admitted resident is "changed." And nothing else in the Act explains what

Congress intended. We therefore must determine whether Congress delegated to the INS the authority to interpret when a change in status occurs. Certainly Congress delegated such authority to the Attorney General through 8 U.S.C. § 1103(a) (1988), which states:

> The Attorney General shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens, except insofar as this chapter or such laws relate to the powers, functions, and duties conferred upon the President, the Secretary of State, the officers of the Department of State, or diplomatic or consular officers: *Provided, however, That determination and ruling by the Attorney General with respect to all questions of law shall be controlling.*

(emphasis added). The Attorney General, in turn, "may require or authorize any employee of the [Immigration and Naturalization] Service or the Department of Justice to perform or exercise any of the powers, privileges, or duties conferred or imposed by this Act or regulations issued thereunder upon any other employee of the [Immigration and Naturalization] Service." 8 U.S.C. § 1103(a). The Attorney General delegated the authority to interpret the Immigration and Naturalization Act to the BIA in 8 C.F.R. § 3.1(d) (1993). *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 266–67, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954).

Thus, having determined that the BIA has the delegated authority to interpret 8 U.S.C. § 1101(a)(20), we must determine whether the BIA's interpretation of the provision to mean that an alien loses his status as a lawful, permanent resident upon the entry of a final order of deportation is based upon a permissible construction of the statute. It is. The BIA's interpretation is based on its decision in *In re Lok,* 18 I & N Dec. 101 (BIA 1981), *aff'd,* 681 F.2d 107 (2d Cir.1982), and its subsequent decisions in *In re Gunaydin,* 18 I & N Dec. 326 (BIA 1982), and *In re Cerna,* Interim Decision 3161 (BIA 1991). In *In re Lok,* the BIA considered four possible steps in the deportation process when the status of an alien admitted for permanent

residence might terminate: (1) when the immigration judge ordered the alien deported; (2) when the immigration judge's deportation order became administratively final; (3) when the court of appeals acted upon a petition for review of the BIA's order or the time allowed for filing a petition expired; or (4) upon the execution of the deportation order by the alien's departure from this country. 18 I & N Dec. at 105. The BIA reasoned that terminating the alien's status as a lawful resident after the immigration judge's adjudication of deportability would be premature because the BIA has the statutory obligation to conduct a *de novo* review of the immigration judge's findings of fact and conclusions of law. *Id.* at 106–07. It ruled out extending an alien's status as a lawful resident past the time an order of deportation becomes administratively final because doing so would encourage spurious appeals to the courts, made solely for the purpose of delaying deportation. *Id.* at 107. The BIA concluded that "the policies of the Act would best be served by deeming the lawful permanent resident status of an alien to end with the entry of a final administrative order of deportation." *Id.* at 105.

In *Variamparambil v. INS,* 831 F.2d at 1366–67, we found this interpretation to be reasonable, at least as it applies to 8 U.S.C. § 1182(c) (1988 & Supp. IV 1992). Section 1182(c) states in pertinent part that "[a]liens lawfully admitted for permanent residence ... returning to a lawful unrelinquished domicile of seven consecutive years, may again be admitted in the discretion of the Attorney General without regard to [the alien's deportability under 8 U.S.C. § 1182(a)]." The issue in *Variamparambil* was whether the alien's status as a lawful, permanent resident had terminated before the seven-year period. In ruling that it had, we stated that the BIA's conclusion in *In re Lok* that an alien's status as a lawful, permanent resident ends, for purposes of § 1182(c)'s seven-year period, upon the entry of an administratively final order of deportation is "reasonable" and "reflects a careful consideration of the alternatives." *Id.* at 1367. The Fifth Circuit agrees. *See Rivera v. INS,* 810 F.2d 540–41 (5th Cir.1987), *vacating on reh'g,* 791 F.2d 1202 (5th Cir.1986).

Perez has not come up with a reason why the point at which an alien's status as a lawful, permanent resident terminates should be any different in cases, like this one, that do not involve § 1182(c). Neither have we. What we said in *Variamparambil* is equally valid in this case: The BIA's conclusion that an alien's status as a lawful, permanent resident terminates upon the entry of an administratively final order of deportation is reasonable.

Perez's status as a lawful, permanent resident terminated on April 13, 1977, when he was ordered deported for entering the United States without inspection. Therefore, when Perez entered the United States on July 25, 1977, he did so with an invalid immigrant visa in violation of 8 U.S.C. § 1182(a)(7)(A)(i)(I), and the BIA properly concluded that Perez was deportable on the basis of that violation of the immigration laws.

We proceed to the second issue in this case, whether Perez should have been granted retroactive permission to enter the United States. The BIA held that it and the immigration judge lacked the authority to grant Perez such relief. The BIA's general powers are described in 8 C.F.R. § 3.1(d)(1) (1993): "Subject to any specific limitation prescribed by this chapter, in considering and determining cases before it as provided in this part the Board shall exercise *such discretion and authority* conferred upon the Attorney General by law *as is appropriate and necessary for the disposition of the case*." (emphasis added). The BIA interprets the italicized language to mean that it and the immigration judges possess only such discretion and authority as is necessary to dispose of cases. *See In re Vrettakos*, 14 I & N Dec. 593, 597 (BIA 1973); *Matter of S–N–*, 6 I & N Dec. 73, 75 (BIA 1954, AG 1954). Thus the BIA has repeatedly held that neither it nor immigration judges have the authority to entertain applications for retroactive permission (or, for that matter, advance permission) to enter the United States "unless granting the application would completely dispose of the case." *Vrettakos*, 14 I & N Dec. at 597; *see also In re Ng*, 17 I & N Dec. 63, 63 (BIA 1979) ("We have held that immigration judges and the Board on review have the

power to grant permission to reapply for admission retroactively where such action is necessary for the complete disposition of the case."). Granting an application for retroactive permission to enter the United States does not "completely dispose of the case" unless the grant eliminates the only ground of deportability or inadmissibility.

Clearly if the BIA's interpretation of 8 C.F.R. § 3.1(d) (1993), is a valid interpretation, the BIA lacked the authority to entertain Perez's request for retroactive permission to apply for admission into the United States. Perez was deportable on *two* grounds: first for having entered the United States after his deportation without the Attorney General's consent (8 U.S.C. § 1182(a)(6)(A)), and second, as we established above, for having entered the United States without valid entry documents (8 U.S.C. § 1182(a)(7)(A)(i)(I)). Therefore, granting Perez retroactive permission to apply for admission into the United States would not have eliminated the only ground of deportability.

■■■ The BIA's interpretation of § 3.1(d) is valid. An agency's construction of its own regulations is entitled to substantial deference. *Lyng v. Payne*, 476 U.S. 926, 939, 106 S.Ct. 2333, 2341, 90 L.Ed.2d 921 (1986). In construing administrative regulations, "the ultimate criterion is the administrative interpretation, which becomes of controlling weight unless it is plainly erroneous or inconsistent with the regulation." *United States v. Larionoff*, 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)); *see also INS v. Stanisic*, 395 U.S. 62, 72, 89 S.Ct. 1519, 1525, 23 L.Ed.2d 101 (1969). The BIA's construction of 8 C.F.R. § 3.1(d), that granting an alien retroactive permission to enter the United States is not "appropriate and necessary for the disposition of the case" unless doing so would completely dispose of the case, is consistent with the wording of the regulation. Surely the regulation is open to other interpretations; however, we need not conclude that the interpretation adopted by the BIA is the only one that it permissibly could have adopted to uphold the BIA's con-

struction. *Chevron,* 467 U.S. at 843 n. 11, 104 S.Ct. at 2782 n. 11.

█ Finally, as an alternative to receiving retroactive permission to enter the United States, Perez argues that he should have been allowed to depart the United States voluntarily. Perez did not include this argument in his appeal to the BIA. His notice of appeal to the BIA states that:

> The Immigration Judge erred when he decided that the *nunc pro tunc* request to reapply after deportation would not resolve the final issue in this case, where the respondent had entered in violation of Section 212(a)(17) [now section 212(a)(6)(A) ] of the Act. Likewise, the allegation of entry in violation of Section 212(a)(20) [now section 212(a)(7)(A)(i)(I) ] was clearly not applicable to this respondent as he had been a permanent resident of the U.S. since approximaely [sic] 1974. The position of the I.J. that the 2nd charge precluded termination of the proceedings upon grant of the *nunc pro tunc* request, is clearly erroneous.

In the brief that he submitted to the BIA, Perez framed the issue as follows: "Did the Immigration Judge err in not granting nunc pro tunc permission to re-apply for admission into the United States after Deportation?" Moreover, in its order affirming the decision of the immigration judge the BIA noted that "[t]he only issues which have been raised on appeal are the immigration judge's finding that the respondent is deportable under section 241(a)(1) of the Act, through section 212(a)(20) of the Act, and his denial of the application for retroactive permission to reapply for admission after deportation."

Perez contends that the immigration judge erroneously denied his application for voluntary departure, and that the BIA erred by not reviewing the application. In reviewing a case on appeal from an immigration judge *de novo,* the BIA makes its own conclusions as to the facts and evidence. *See Rivera,* 810 F.2d at 541. But it cannot be expected to resolve issues that the alien should have raised, but did not. Indeed, the BIA can summarily dismiss an alien's appeal if the alien inadequately informs it of what aspects of the immigration judge's decision were al-legedly incorrect and why. 8 C.F.R. § 3.3(1–a)(i)(A) (1993); *Martinez–Zelaya v. INS,* 841 F.2d 294, 296 (9th Cir.1988); *Bonne–Annee v. INS,* 810 F.2d 1077, 1078 (11th Cir.1987); *Townsend v. INS,* 799 F.2d 179, 181–82 (5th Cir.1986). Perez failed to inform the BIA that he sought to challenge the immigration judge's decision not to allow him to depart the United States voluntarily. As such, the BIA properly declined to review that decision.

Perez devotes a good portion of his brief to arguments why the immigration judge should have allowed him to depart the United States voluntarily. Nevertheless, because Perez did not initially present these arguments to the BIA, we cannot consider them. The Immigration and Nationality Act provides: "An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as a matter of right under the immigration laws and regulations...." 8 U.S.C. § 1105a(c) (1988). By neglecting to present his claim to the BIA that the immigration judge should have allowed him to depart the United States voluntarily, Perez failed to exhaust his administrative remedies as is required by the Act. Because the exhaustion requirement is jurisdictional, *see Athehortua–Vanegas v. INS,* 876 F.2d 238, 240 (1st Cir.1989); *Garcia–Mir v. Smith,* 766 F.2d 1478, 1488–89 (11th Cir.1985), *cert. denied,* 475 U.S. 1022, 106 S.Ct. 1213, 89 L.Ed.2d 325 (1986), we lack jurisdiction to *consider whether Perez should be allowed to depart voluntarily.*

## IV. CONCLUSION

The BIA correctly concluded that Perez lost his status as a lawful, permanent resident when he was ordered deported on April 13, 1977, and properly found that the immigration judge lacked the authority to grant Perez retroactive permission to reapply for admission into the United States. Finally, because Perez did not raise in his appeal to the BIA the issue whether he should have been allowed to depart the United States voluntarily, the BIA properly declined to review that issue, and this court lacks jurisdiction to consider it. We therefore DENY

Perez's petition for review of the BIA's order.