**Zofia PUPEK, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 94–1666.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1995.

Decided Feb. 15, 1995.

Steven E. Stern (argued), Stern & Devitt, Chicago, IL, for petitioner.

Philemina Jones, Donald E. Keener (argued), Dept. of Justice, Office of Immigration Litigation, Washington, DC, Janet Reno, U.S. Atty. Gen., Office of the U.S. Atty. Gen., Washington, DC, Samuel Der–Yeghiayan, I.N.S., Chicago, IL, James G. Hoofnagle, Jr., Asst. U.S. Atty., Office of the U.S. Atty., Civ. Div., Chicago, IL, William J. Howard, U.S. Dept. of Justice, Civ. Div., Immigration Litigation, Washington, DC, David J. Kline, Dept. of Justice, Office of Immigration Litigation, Washington, DC, for respondent.

Before CUDAHY, ESCHBACH, and RIPPLE, Circuit Judges.

ESCHBACH, Circuit Judge.

Zofia Pupek ("Pupek") petitions for review of a decision of the Board of Immigration Appeals ("BIA") which affirmed an immigration judge's order of deportation on the grounds that Pupek entered the United States without inspection and without having received consent to apply or reapply for admission after deportation in violation of § 241(a)(1)(A) and (B) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(1)(A) and (B). For the reasons below, we deny the petition.

## I.

Pupek is a native and citizen of Poland. The record indicates that Pupek first entered the United States from Poland in July 1985. Subsequent to her entry, Pupek applied for political asylum and withholding of deportation, claiming a fear of persecution by the Polish government due to her association with the Solidarity organization. On June 25, 1987, an immigration judge denied her application and found her deportable. The immigration judge's decision was affirmed by the BIA on April 12, 1990. The BIA found that she was unable to establish past persecution, and any future possibility of persecution was eliminated when Solidarity formally entered into a governing coalition for Poland.

At some point during the pendency of Pupek's appeal before the BIA on her political asylum application, or soon after the decision was issued, she applied for legalization pursuant to an injunctive order in the class action entitled *League of United Latin American Citizens ("LULAC") v. Immigration and Naturalization Service ("INS")*, No. 87–4757–WDK (JRx) (C.D.Cal. Aug. 12, 1988).[1] This injunctive order required the INS to consider untimely applications for legalization filed by aliens who were previously dissuaded from filing by the INS's original reentry policy. The *LULAC* order

was subsequently stayed on August 30, 1988 while the INS appealed the injunctive order. Under the terms of this stay, the INS agreed to grant a stay of deportation and temporary employment authorization to all *LULAC* class members whose applications made a *prima facie* showing of eligibility for legalization, but the INS was not obligated to process the applications. Pursuant to this order, Pupek received a temporary employment authorization on August 13, 1990.

On May 30, 1991, the INS issued a Warrant of Deportation for Pupek. Pupek filed a motion for the termination of her deportation proceedings and for administrative relief on June 17, 1991, but she was nevertheless deported to Poland on June 27, 1991.[2] On September 25, 1991, her motion for the termination of her deportation proceedings was denied by the BIA.

In December 1991, Pupek reentered the United States without presenting herself for inspection and without receiving permission to reapply for admission after her deportation. After approaching Pupek, the INS issued on February 5, 1992 an order to show cause why Pupek should not be deported. As an affirmative defense, Pupek collaterally attacked the lawfulness of her 1991 deportation. On April 27, 1992, the immigration judge rejected this argument and found Pupek deportable pursuant to § 1251(a)(1)(A) and (B). Pupek appealed her claim to the BIA where it was dismissed on February 1, 1994. A timely petition for review was filed in this court pursuant to 8 U.S.C. § 1105a(a)(1).

## II.

### A.

Title II of the Immigration Reform and Control Act of 1986 ("IRCA"), Pub.L. 99–603, 100 Stat. 3359, created an alien legalization

---

1. *Aff'd, sub nom. Catholic Social Services, Inc. v. Thornburgh*, 956 F.2d 914 (9th Cir.1992), *vacated and remanded on jurisdictional grounds sub nom. Reno v. Catholic Social Services, Inc. ("CSS")*, —— U.S. ——, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993) (remanding to the district court for consideration of which class members presented ripe claims).

2. According to Pupek's counsel, a petition for habeas corpus was filed on her behalf in federal court the same day she was deported. It seems no action was ever taken on this petition.

program by adding § 245A to the Immigration and Nationality Act, 8 U.S.C. § 1255a. Under this "limited amnesty" program, *INS v. Legalization Assistance Project,* — U.S. —, —, 114 S.Ct. 422, 423, 126 L.Ed.2d 410 (1993), certain aliens unlawfully present in the United States could apply for an adjustment of their status, first to become a temporary resident, and then, after a one-year wait, for permission to reside permanently in the United States. There were several requirements for such an adjustment of status. An applicant for temporary resident status must have entered the United States before January 1, 1982 and have resided continuously in the United States in an unlawful status since that date, § 1255a(a)(2), and the applicant must have been continuously physically present in the United States (excluding brief, casual, and innocent absences) since November 6, 1986, the date IRCA was enacted, § 1255a(a)(3). The applicant must also have been otherwise admissible as an immigrant, § 1255a(a)(4), and have presented an application for such adjustment during the 12-month period commencing on May 5, 1987, § 1255a(a)(1), 8 C.F.R. § 245a.2(a)(1). Until a final determination was made on the alien's application, an applicant who presented a *prima facie* application for adjustment of status during the application period was entitled to a stay of deportation and a temporary employment authorization under § 1255a(e).

In 1987, a dispute arose over the interpretation of the "continuous unlawful residence" requirement.[3] Although certain brief absences from the United States would not violate this requirement, *see* § 1255a(g)(2)(A), an INS regulation stated that an alien who had gone abroad and re-entered the United States by presenting "facially valid" documents to immigration authorities would not be in continuous unlawful residence. 8 C.F.R. § 245a.2(b)(8). In July 1987, the *LULAC* plaintiffs brought suit challenging these reentry regulations. While this suit was still pending, the INS voluntarily modified the challenged regulations on November 17, 1987. The plaintiffs, however, continued their challenge to the former regulations, and the district court certified a class including all aliens who failed to file a timely application for legalization in reliance on information that they were ineligible under the INS's former regulations. On July 15, 1988, ten weeks after the end of the 12-month application period, the district court held the old regulations invalid, while reserving the question of a remedy. Plaintiffs sought a remedial order which would extend the application period until November 30, 1988. On August 12, 1988, the district court granted the plaintiffs' request for injunctive relief, but this remedy was stayed on August 30, 1988, pending INS appeal. The terms of the stay order, much like the remedy outlined in § 1255a(e), provided any class member whose application made a *prima facie* showing of eligibility with a stay of deportation and a temporary employment authorization until the INS appeal was resolved.

The Ninth Circuit affirmed the district court order, but the Supreme Court vacated and remanded on jurisdictional grounds in *CSS,* — U.S. at —, 113 S.Ct. at 2500. The Court rejected the INS's claim that the narrow scheme for review outlined in § 1255a(f) precluded district court jurisdiction, reasoning that the challenge was to the legality of the regulations rather than to the denial of any individual applications, *Id.* at — — —, 113 S.Ct. at 2494–95; nevertheless, it held that the district court lacked jurisdiction on ripeness grounds. According to the Court, in seeking an injunctive remedy, "a class member's claim would ripen only once he took the affirmative steps that he could take before the INS blocked his path by applying the regulation to him." *Id.* at —, 113 S.Ct. at 2496. Thus, the district court's order is of no effect both for plaintiffs who never applied for legalization during the application period, since such claims would not be ripe, and for applicants who did apply but had their applications denied, since those applicants would then be subject to the statutory scheme for review. The district court's order did potentially survive, however, for a

---

3. Much of the description of these events is drawn from *CSS,* — U.S. at — – —, 113   S.Ct. at 2491–93.

narrow class of aliens who attempted to file a timely application but were "front-desked," or rejected by an INS Legalization Assistant at the front desk of the INS office due to the INS's former reentry regulations. *Id.* at ——, 113 S.Ct. at 2499. The Court remanded to the district court to determine which members were front-desked in this manner. *Id.* at ——, 113 S.Ct. at 2500.[4]

### B.

■ Pupek's principal argument on appeal is that the BIA erred in holding Pupek deportable when she was a legalization applicant pursuant to the *LULAC* injunctive order and thus could not be deported during the pendency of her application. Our review of the BIA's decision is limited. *Perez–Rodriguez v. INS,* 3 F.3d 1074, 1077 (7th Cir.1993). The Attorney General, and, by delegation, the immigration judge and the BIA, are vested with the primary authority to adjudicate an alien's deportability. *Id.* "Absent an error of law or unfairness in procedure, the court must affirm the administrative order of deportation if the order is supported by 'reasonable, substantial, and probative evidence.'" *Id.,* quoting 8 U.S.C. § 1105a(a)(4); *accord Demirovski v. INS,* 39 F.3d 177, 180 (7th Cir.1994).

Pupek admits that she entered the United States without being inspected by an immigration official, in violation of § 1251(a)(1)(B). She also admits that she had previously been deported from the United States and that she did not receive permission from the Attorney General of the United States before entering the United States in December 1991, in violation of § 1251(a)(1)(A). Thus, deportability has been established by "rea-

sonable, substantial, and probative evidence." *Cordoba–Chaves v. INS,* 946 F.2d 1244, 1249 (7th Cir.1991); *accord Rosendo–Ramirez v. INS,* 32 F.3d 1085, 1087 (7th Cir.1994). However, this does not end our inquiry.

■ Rather than directly contesting the charges which form the basis of her Order of Deportation, Pupek seeks to collaterally attack her 1991 deportation and thereby undermine the basis for the BIA order in this case. Orders of deportation are generally not subject to collateral attack. *Ponce–Gonzalez v. INS,* 775 F.2d 1342, 1346 (5th Cir.1985). However, an alien may collaterally attack a final order of deportation in a subsequent deportation proceeding if she can demonstrate that the prior proceeding resulted in a "gross miscarriage of justice." *Id.; Ramirez–Juarez v. INS,* 633 F.2d 174, 175–76 (9th Cir.1980); *Rukavina v. INS,* 303 F.2d 645, 646–47 (7th Cir.1962); *Matter of Roman,* 19 I. & N. Dec. 855 (BIA 1988). Pupek contends such a gross miscarriage of justice occurred when she was deported in 1991 while her legalization application was pending.[5]

Pupek claims that, as a member of the *LULAC* class and an applicant for legalization under § 1255a, deportation was unlawful under the *LULAC* stay order and § 1255a(e)(2).[6] As an initial matter, Pupek's reliance on *LULAC* is questionable given the Supreme Court's treatment of the case in *CSS,* —— U.S. ——, 113 S.Ct. 2485. Under the Court's holding, the *LULAC* order survives only for the small group of cases in which aliens were front-desked by INS Legalization Assistants in their application for legalization.[7] *Id.* at ——–——, 113 S.Ct. at

4. The Court also left open the "unlikely" possibility that an alien might be able to demonstrate that the front-desking policy was a substantial cause of his failure to apply in the first place, giving rise to a ripe claim. *CSS,* —— U.S. at ——, n. 28, 113 S.Ct. at 2500, n. 28.

5. Pupek does not contest the BIA's findings of fact underlying the denial of her application for political asylum and withholding of deportation.

6. Pupek cannot avail herself of the protections of § 1255a(e)(2) independently of the *LULAC* order because she failed to file her application within 12 months of the date set by the Attorney Gener-

al, May 5, 1987. *See* § 1255a(a)(1)(A) and 8 C.F.R. § 245a.2(a)(1). The *LULAC* plaintiffs specifically sought to extend the application deadline in the remedial order.

7. The Court's holding in *CSS* does not, as the INS contends, strip the district court of all jurisdiction to issue its injunctive order. While the limited review scheme in § 1255a(f) does preclude district court jurisdiction for those individuals whose applications were formally denied by the INS, the Court did not so limit review for front-desked applicants. The Court specifically stated that "to construe § 1255a(f)(1) to bar district court jurisdiction over [a front-desked appli-

2497–98. Although she had the benefit of the *CSS* opinion when preparing her brief to this court, Pupek made no attempt to allege that she was front-desked or that front-desking was a substantial cause of her failure to apply, nor did she file a reply brief to dispute the INS's allegations in its brief that front-desking is not an issue in this case. Moreover, there is nothing in the administrative record which would indicate that Pupek had been front-desked. The first suggestion that front-desking might have occurred in this case was Pupek's counsel's assertion in response to a question from the bench at oral argument that Pupek would indicate that she was front-desked if the issue was raised before the *LULAC* court. While we are reluctant to consider claims which are raised for the first time at oral argument, *see United States v. Levine*, 983 F.2d 785, 789 n. 4 (7th Cir.1993), Pupek's claim to the protection of the stay order is without merit even if she was indeed front-desked.

■ Under both the *LULAC* order and § 1255a(e)(2), a stay of deportation is conditioned upon an applicant presenting a *prima facie* application for an adjustment of status.[8] Pupek's application is insufficient under the first requirement that she demonstrate that she entered the United States before January 1, 1982 and maintained continuous unlawful residence since that date. *See* § 1255a(a)(2).

The BIA found that Pupek failed to demonstrate that she entered the United States before January 1, 1982. Pupek represented in her own biographic information form submitted in connection with her political asylum application that she first entered the United States in July 1985. She also indicated on the same form that she lived from March 1962 until July 1985 in Poland before entering the United States and that she worked as a senior cook at the state kindergarten in N.Wies Elcka, Poland from November 1970 until resigning before she left for the United States in July 1985. These findings are well-supported by the record.

Instead of directly disputing these findings, Pupek argues that this is an issue for the *LULAC* district court to determine. According to Pupek, since she was accepted as a class member in *LULAC*, she is protected from deportation by the stay order and will continue to be protected until the district court resolves the inconsistencies between her asylum and legalization applications by determining that she is not a proper class member. This argument, however, ignores critical portions of the stay order and the proceedings leading up to her deportation.

Under ¶ 3(e) of the stay order, only class members who have filed applications under ¶ 3(c) which are in conformance with the *prima facie* requirements of § 1255a are entitled to a stay of deportation. This questions Pupek's underlying assumption that a determination was made once and for all that she was *prima facie* eligible for legalization when she was accepted as a member of the class. While the *LULAC* court determines who is a class member, the INS determines whether a class member is *prima facie* eligible for legalization. More specifically, ¶ 3(f) of the stay order provides that any class member apprehended by the INS "may be questioned by INS agents as to his or her prima facie status as a class member and elibility [sic] for legalization under IRCA." In fact, this determination apparently did take place before Pupek was deported on June 27, 1991, and she was found to have failed to present a *prima facie* application for legalization.[9] Even if Pupek was mistakenly

cant's] challenge, we would have to impute to Congress an intent to preclude judicial review of the legality of INS action entirely under those circumstances." *CSS*, —— U.S. at ——, 113 S.Ct. at 2499. It found no clear and convincing evidence in the statute to justify imputing such a view to Congress. *Id.; see Ayuda, Inc. v. Reno*, 7 F.3d 246, 250 (D.C.Cir.1993), *cert. denied*, —— U.S. ——, 115 S.Ct. 70, 130 L.Ed.2d 26 (1994).

8. Section 1255a(e)(2) only stays deportation and provides an employment authorization card to

"an alien who presents a prima facie application for adjustment of status." Under the terms of the *LULAC* district court order issued August 30, 1988, an applicant is not excused from these *prima facie* requirements. Under ¶ 2(c), applications "shall conform to the requirements which were in effect on May 1, 1988," during the statutory application period.

9. INS attorneys represented at several places in the record, most notably to the immigration judge in the April 27, 1992 order to show cause

given employment authorization pursuant to the stay order, nothing in the stay order precluded the INS from reconsidering this determination when the inconsistencies in her asylum and legalization applications came to light, and ¶ 3(f) explicitly provided for reopening such inquiries in the circumstances existing in this case.

Thus, even if the *LULAC* court still had jurisdiction over Pupek, she would not qualify for the protection of its stay order because she failed to present a *prima facie* application for adjustment of status to the INS. The BIA's determination that the 1991 deportation proceeding was not a gross miscarriage of justice is supported by reasonable, substantial and probative evidence.

### III.

Accordingly, the petition for review is DENIED.

proceeding, that the INS did consider Pupek's *prima facie* eligibility for legalization before she was deported and determined she was not eligible based on her entry date. *See* R. 6, 8, 9, 91–92. In the BIA's September 25, 1991 order denying Pupek's motion to terminate deportation proceedings, the BIA also found that, despite her possession of an employment authorization card, she had identified no provision under the IRCA which would make her eligible for the card or a stay of deportation.